[Civ. No. 13565. Third Dist. July 25, 1973.]

EUGENE ZUMWALT, Plaintiff and Respondent, v.
TRUSTEES OF THE CALIFORNIA STATE COLLEGES et al.,
Defendants and Appellants.

666

668

**COUNSEL**

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill, Edmund E. White and James D. Claytor, Deputy Attorneys General, for Defendants and Appellants.

Penrod, Himelstein, Savinar & Sims, Tim Savinar, Richard M. Sims III and Mark Himelstein for Plaintiff and Respondent.

Sheldon L. Greene and Lorenz, Greene & Kelley as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**FRIEDMAN, J.**—Plaintiff Eugene Zumwalt is a professor of English at California State University, Fresno, formerly known as Fresno State College. (See Ed. Code, §§ 23600-23601.) The trial court granted his petition for a writ of mandate directing the defendants (primarily the state college trustees and the president of the college) either to reinstate him as chairman of the English department or to give him a statement of cause for removal and an opportunity for hearing before the State Personnel Board. Defendants appeal.

According to the trial court's findings of fact, Dr. Zumwalt was nominated as chairman of the English department by a vote of his departmental colleagues and appointed to that position by the then academic vice president of the college effective September 1, 1969. He commenced serving as chairman in September 1969. In December 1970 he was removed from the chairmanship on orders of the college president, Norman Baxter. No reason for the removal was given. The action was accomplished by acting dean Rea, who handed Dr. Zumwalt a letter relieving him of his duties, and by campus policemen who changed the lock on the office doors and sealed the filing cabinets. The letter was signed by President Baxter. It gave no ground for the action. It declared that Dr. Zumwalt's appointment as professor of English was unaffected. This suit was filed a few days thereafter.

The trial court accepted Dr. Zumwalt's thesis that his enforced return to simple professorial status was a "demotion" which required compliance

with the notice and hearing provisions of the Education Code. Section 24306 of that code lists the grounds for which a permanent or probationary employee of the state college system may be dismissed, demoted or suspended.[1] Section 24308 calls for a written notice of dismissal, demotion or suspension and a statement of cause. Section 24309 provides for hearing and review by the State Personnel Board at the request of the affected employee.

Another statute of interest is Education Code section 22607, which permits any administrative employee to be reassigned to an academic or other position commensurate with his qualifications at the salary fixed for that position. Although section 22607 was primarily aimed to achieve flexibility in shifting personnel when the state college system received autonomy in 1961, the reassignment provision represents an expression of ongoing authority. (*Gilbaugh* v. *Bautzer,* 3 Cal.App.3d 793 [83 Cal. Rptr. 806].)

The statutes in question prevent arbitrary deprivations of employment by limiting the causes, by demanding a written statement of cause and supplying an opportunity for hearing before a disinterested tribunal. Generally speaking, a demotion is a reduction to a lower employment, rank or grade. (*United Aircraft Corp.* v. *Lodge 971 of Internat'l Assn. of Mach.,* 360 F.2d 150, 151; *Reed* v. *City Council of City of Roseville,* 60 Cal. App.2d 628, 635 [141 P.2d 459].) The following is a summation of defendants' contentions: The chairmanship of an academic department is not a rank, position or employment separate from the professorial position of its holder; rather, it is a title or status signifying its holder's temporary assignment to administrative duties; that the concept of tenure characterizes the individual's position in the teaching hierarchy, but not his temporary assignment to duty as departmental chairman; at his own pleasure the college president who initially assigned the professor to administrative duties as chairman may reassign him to purely teaching duties and confer the title and duties of chairman on another; Dr. Zumwalt's reassignment to teaching duty was not a movement from one rank, position or employment to another, hence not a demotion within the meaning of Education Code section 24306.[2]

---

[1] In 1970, when Dr. Zumwalt was removed as department chairman, the opening clause of Education Code section 24306 read: "A permanent or probationary academic or nonacademic employee may be dismissed, demoted, or suspended for the following causes: . . ." In 1971 this clause was amended to read as follows: "Any permanent or probationary employee may be dismissed, demoted, or suspended for the following causes: . . ."

[2] Early in this lawsuit the trial court refused an alternative writ of mandate. The refusal was grounded on the theory that Dr. Zumwalt had failed to exhaust his

In matters of academic rank and tenure, amorphous attitudes slowly evolve into oral traditions and unofficial statements of policy, eventually crystallizing in official rules and statutes. Relatively unofficial practices and expectations may congeal in an unwritten "common law" at a particular university, creating a de facto status similar to tenure. (*Board of Regents* v. *Roth,* 408 U.S. 564, 577 [33 L.Ed.2d 548, 561, 92 S.Ct. 2701]; *Perry* v. *Sindermann,* 408 U.S. 593, 601 [33 L.Ed.2d 570, 580, 92 S.Ct. 2694].)

The record before us presents a melange of all these elements. By stipulation a number of affidavits were placed before the trial court. Plaintiff is supported by the affidavits of faculty members of a number of colleges and universities, all expressing the view that status as chairman of an academic department is an honor, an exercise of increased responsibility and a career asset; that removal "before the end of his term" is damaging to the individual's professional reputation. Defendants, on the other hand, supplied affidavits of several persons experienced in personnel administration within the California state college system. Academic personnel are employed at the four levels customary among colleges—instructor, assistant professor, associate professor and professor. In summary, the affidavits declare the existence of a consistent policy of the trustees of the California state colleges that the assignment of an academic employee as department head is temporary and at the pleasure of the college president; that according to the practice at Fresno State College, department heads serve from three to five years, subject to reassignment at any time at the pleasure of the college president; that department heads are continually reassigned "without notice of cause or a hearing"; that the American Association of University Professors has taken the position that assignment as chairman confers no tenure.[3]

---

administrative remedies by seeking a hearing before the State Personnel Board under Education Code section 24309. Plaintiff then applied to the Personnel Board, which concluded that no demotion from one position to another had occurred, hence that it had no jurisdiction to hold a hearing. An amended petition for mandate was then filed and the lawsuit resumed. In its judgment directing the alternatives of Dr. Zumwalt's reinstatement or resumption of "demotion" proceedings under the Education Code, the court set afoot a circular procedure. If Dr. Zumwalt were now to receive a notice of demotion and were then to demand a hearing at the hands of the State Personnel Board, no reason would exist why the board should not reiterate its lack of jurisdiction and deny a hearing, compelling plaintiff to initiate a renewed lawsuit. In view of its conclusion, the trial court should have joined the State Personnel Board as a party and ordered it to assume jurisdiction and hold a hearing. It follows that this appeal is taken from a relatively ineffectual judgment. The central issue, nevertheless, is legal and not factual; there is every reason to decide it on appeal and bring the litigation to a relatively speedy end.

[3]The Statement on Government of Colleges and Universities of the American Association of University Professors (1966) declares: "The chairman or head of

By implication these affidavits reveal an ongoing tension between college administration and faculty, each wary of expansions of competing power. The affidavits express primarily the policy predilections of the affiants. Prevailing rules sometimes bulwark one center of power, rejecting the policy claims of another. The bare rules of law, moreover, often ignore such intangibles as well-developed campus communications.[4] The courts interpret and administer the law, refraining from policy choices. We examine the prevailing rules and compare their sources:

The trustees of the California State Colleges (now called the California State University and Colleges) became the governing body of the system on July 1, 1961. Section 24201, Education Code, directs the trustees to "provide by rule" for the government of their appointees and employees, including appointment, terms, tenure, dismissal and demotion. The rules of the trustees are codified as part V of title 5, California Administrative Code. The basic rule (Cal. Admin. Code, tit. 5, § 42700) describes several kinds of employees, including academic and administrative employees, and defines such terms as tenure, probationary period, and academic-administrative assignment.[5] The rules provide for the gain of tenure on the part of academic employees (§ 43560 et seq.) and administrative employees (§ 43580 et seq.) and for the acquisition of permanent status by nonacademic, e.g., clerical, employees (§ 43588.1 et seq.). They distinctly bar tenure in academic-administrative assignments.[6] Except for

---

a department, who serves as the chief representative of his department within an institution, should be selected either by departmental election or by appointment following consultation with members of the department and of related departments; appointments should normally be in conformity with department members' judgment. The chairman or department head should not have tenure in his office; his tenure as a faculty member is a matter of separate right. He should serve for a stated term but without prejudice to re-election or to reappointment by procedures which involve appropriate faculty consultation." (AAUP, Policy Documents and Reports (1973 ed.) p. 38.)

[4] In July 1971, some months after the events in suit, the trustees of the state college system adopted a rule (Cal. Admin. Code, tit. 5, § 42701) declaring a policy that faculty be consulted on academic personnel matters and requiring the development of consultative procedures on each campus.

[5] In addition to academic and administrative employees, section 42700 refers to executive and nonacademic employees, two terms which have no apparent relevance here. Ever since 1962 the same rule has defined academic-administrative assignment as follows: "(p) 'Academic-administrative assignment' means:

"(1) A work assignment to be determined by the Trustees, filled by an academic (class and rank) or an administrative employee at a campus or the Chancellor's Office when serving in a key administrative capacity, planning, organizing and directing activities which relate to the instructional programs and/or participating in policy planning; or

"(2) . . . . . . . . . . . . . . . . . . . .

[6] Section 43593 (tit. 5, Cal. Admin. Code), adopted in 1962, provides in part: "Tenure does not apply to academic-administrative assignments. Persons serving in aca-

separate channels of authority they draw no distinction between disciplinary actions (defined as dismissal, demotion or suspension) against tenured and nontenured academic employees. (§§ 43520-43526.) At no point do the rules refer expressly to the title, status or position of chairman of an academic department.

Express references do exist in less official form. A faculty handbook at Fresno State College contained a declaration or rule, referring to department chairmen and school deans as "administrative appointments." It called for presidential appointment of each department chairman on nomination of the faculty within the department and declared a "term of office" which would "normally" extend for a period recommended by the department, but not less than three years and not more than five years.[7] The record does not reveal the origin or auspices of this declaration. There is no claim that it emanated from the trustees of the state college system. It finds no expression in the codified rules adopted by the trustees.

Of similarly uncertain origin is a provision in a document described as the faculty constitution at Fresno State College. The document states: "A Departmental chairmanship carries with it no tenure as such, though service in this capacity shall contribute to the requirement for academic tenure." This provision was inferably adopted by a faculty organization; there is no claim that it received recognition by the trustees of the college system.

Finally, the record incorporates a copy of a resolution adopted by the

demic-administrative assignments as defined by action of the Trustees in accordance with Section 42700(p) shall retain any tenure rights already earned either as an academic or administrative employee or in the case of probationary employees at a campus may gain tenure in either the academic or the administrative category, depending on the background and service of the employee . . . ."

(c) An employee serving in an academic-administrative assignment who immediately preceding such assignment was an administrative employee with tenure, shall retain his permanent status as an administrative employee."

Section 43694, as amended in September 1972, provides: "Academic-administrative assignments at a campus may be terminated at any time by a president with the approval of the Chancellor. The Chancellor may terminate such assignments in his office at any time."

[7] The faculty handbook declared: "B. Eligibility. To be eligible for a departmental chairmanship the candidate normally shall have earned the terminal degree appropriate to his discipline (or the professional equivalent), achieved a rank of assistant professor or above, and served a minimum of four years of full-time college teaching in his field. A departmental chairmanship carries with it no tenure as such, though service in this capacity shall contribute to the requirement for academic tenure.

"C. Term of Office. The term of office of a Department Chairman normally shall be no less than three (3), and no more than five (5) years. The term of office shall be recommended by the Department at the time it makes its nomination to the President. The term of office of a Department Chairman shall normally commence on September 1."

trustees of the college system on November 24, 1970, "reaffirming" that department chairmen serve at the pleasure of the college president.[8] Although the resolution ostensibly reaffirms an earlier expression, the record is silent as to the nature, form and existence of the earlier expression.

Because the trustees' codified rules do not mention departmental chairmen, it is necessary to draw implications from the various sources. These range from the trustees' "pleasure" resolution to the declaration in the Fresno institution's faculty handbook adverting to a three- to five-year "term of office." There is an inherent inconsistency between a pleasure appointment and one characterized by tenure or a term of office. Generally, the holder of a pleasure appointment may be removed without cause and without notice and hearing. (*Bogacki* v. *Board of Supervisors,* 5 Cal.3d 771, 782-783 [97 Cal.Rptr. 657, 489 P.2d 537]; *Ball* v. *City Council,* 252 Cal.App.2d 136, 141 [60 Cal.Rptr. 139].) Tenure, on the other hand, denotes relinquishment of the employer's unfettered power to terminate the employee's services.[9] Explicit provisions or established understandings restricting the causes for removal and demanding prior notice and hearing invest the position holder with a species of tenure per se which clashes with the central characteristics of a pleasure appointment. (See *Perry* v. *Sindermann, supra,* 408 U.S. at p. 601 [33 L.Ed.2d at p. 580].)

■ Among the trial court's findings of fact was a declaration that "the rules" of Fresno State College authorize each academic department to establish a three- to five-year term for the chairmanship; that the English department had specified a three-year term. The only expression of such a "rule" was the local faculty handbook. (See fn. 7, *ante.*) Viewed as a finding that Dr. Zumwalt held a three-year term of office, the trial court's declaration was a conclusion of law. It did not lose that characteristic by

---

[8]The text of the resolution reads as follows:

"WHEREAS, It is customary and desirable to have appropriate faculty consultation in the selection process for department chairmen; and

"WHEREAS, the President of each State College has appointment authority for department chairmen; now, therefore, be it

"RESOLVED, By the Board of Trustees of the California State Colleges, that this Board reaffirms its policy that the President of each State College is responsible for the appointment and supervision of department chairmen and that they serve at his pleasure."

[9]The rules of the State College Trustees define tenure as follows: " 'Tenure' or the word 'permanent' when used in relation to employment status means the right to continued employment on a particular campus or in the Office of the Chancellor unless dismissed for cause or laid off for lack of funds or lack of work." (Cal. Admin. Code, tit. 5, § 42700, subd. (q); see Bryse & Joughin, Tenure in American Higher Education, p. 2.)

being placed among the findings of fact. (*Almaden-Santa Clara Vineyards* v. *Paul,* 239 Cal.App.2d 860, 867, fn. 10 [49 Cal.Rptr. 256], and cases cited.) As a conclusion of law it was erroneous, for it ignored other, superior sources of authority. California law, specifically Education Code section 22600, reposes administrative authority in the trustees of the California State University and Colleges. Section 24201 directs the trustees to "provide by rule" for the government of their employees, including appointment, terms, tenure, dismissal and demotion. (See *Stanton* v. *Dumke,* 64 Cal.2d 199, 203 [49 Cal.Rptr. 380, 411 P.2d 108].) ██ Rules of an administrative agency implementing a statutory delegation of authority have the force of law. (*Rigley* v. *Board of Retirement,* 260 Cal.App.2d 445, 450 [67 Cal.Rptr. 185], and cases cited.) Within their scope the codified rules of the college trustees prevail over practices and policies emanating from the administration or faculty of an individual institution.

██ We sustain defendant trustees' contention that a departmental chairmanship is an academic-administrative assignment, as defined by section 42700(p)(1). (See fn. 5, *ante.*) A departmental chairman, as the record portrays him, is a tenured faculty member, usually a professor, who temporarily assumes administrative and supervisorial tasks, usually bearing a more or less diminished teaching load. The assignment carries no increase in salary. Dr. Zumwalt states that as chairman of the English department he had responsibility for faculty recruitment, supervised a tutorial program and, except for teaching an upper division course, devoted his entire time to administrative duties. The role fits with nicety into the description given by section 42700(p)(1), i.e., a "work assignment . . . filled by an academic . . . employee . . . when serving in a key administrative capacity, planning, organizing and directing activities which relate to the instructional programs . . . ." In short, appointment as chairman is a work assignment which clothes a faculty member with administrative duties but not with a higher position or rank.

Sections 43593 and 43594 of the trustees' rules (fn. 6, *ante*) bar tenure in academic-administrative assignments; distinctly preserve the holder's academic tenure; authorize a campus president to terminate the assignment "at any time."[10] The trustees' resolution of November 1970 reaffirming the "pleasure" status of departmental chairmen (fn. 8, *ante*) is consistent with the trustees' conception of the chairmanship as an academic-administrative assignment, defeasible at any time as provided in section 43594 of the rules.

---

[10]Section 43594 of the rules (fn. 6, *ante*) requires the chancellor's approval, but there is no claim that president Baxter's action in relieving Dr. Zumwalt of the chairmanship did not have the chancellor's approval.

Although the trial court held otherwise, the faculty handbook of the Fresno institution (fn. 7, *ante*) does not invest a departmental chairman with either tenure or a term of office. It distinctly declares against tenure; expressly recognizes "normal" service of three to five years; implicitly recognizes situations which may diverge from "normal." Viewed as the proclamation of an office or employment distinct from its holder's faculty position and endowing him with expectations of a fixed term, the local rule would clash with the governing law as expressed in the trustees' rules. The latter characterize the chairmanship as a temporary assignment of administrative duties which may be shifted to another at any time. ■ In view of the chairmanship's character as a temporary assignment of administrative duties, Dr. Zumwalt's reassignment to full-time teaching duties was not a "demotion" in the sense of a shift from a higher position to a separate, lower position.

The problem can be approached from another direction. Education Code section 24306 (fn. 1, *ante*), lists the causes for dismissal, demotion or suspension of any *permanent or probationary* employee. The trustees' rules reflect the statute for, as noted earlier, they draw no pertinent distinction between tenured and nontenured employees in terms of disciplinary procedures. They invest an academic department chairman with neither permanent nor probationary status in that role; rather, his permanent or probationary status is manifested only by the tenured or nontenured academic position in which he is regularly employed, for example, as professor. A professor's gain or loss of departmental chairmanship entails no gain or loss of his permanent or probationary (tenured or nontenured) professorship. To view the loss of the chairmanship as a demotion in the statutory sense involves a contradiction in statutory terms, because there is no movement from one permanent or probationary status to another. The statute is restricted to dismissals, demotions and suspensions from positions in which the holder has permanent or probationary status; the department chairman has neither status in that position; ergo, termination of his chairmanship is outside the coverage of section 24306 and its associated provisions.[11]

----

[11]The parties have discussed the question whether Dr. Zumwalt's removal as chairman of the English department was a reassignment of an administrative employee within the meaning of Education Code section 22607, as interpreted in *Gilbaugh* v. *Bautzer, supra,* 3 Cal.App.3d 793. That section declares: "[A]ny administrative employee may be reassigned to an academic or other position commensurate with his qualifications at the salary fixed for that position and shall have a right to appeal from such reassignment, but only as to whether the position to which he is reassigned is commensurate with his qualifications." The right of appeal is implemented by sections 43500-43501 of the codified rules, which require notice of reassignment and supply a hearing before an impartial board.

Without attempting to decide the question, we note that the rules define "admin-

In support of its "demotion" conclusion, the trial court compared plaintiff's functions and perquisites before and after loss of the chairmanship. The appointment carried no salary other than that paid the holder in his academic position. The loss of administrative or supervisorial function was viewed as an influential factor. We reject that factor, because it rests on the unsupported assumption that administration or supervision represents a more elevated function than teaching. The difference in physical facilities was inconsequential. While he was chairman, plaintiff enjoyed preference in obtaining a $3,000 summer teaching position. The record does not show that the summer teaching position was a fixed perquisite of the chairmanship; to the contrary, the findings declare that preference for summer school positions is given to new faculty members.

Plaintiff relies on Executive Order No. 113 promulgated by the chancellor containing certain directions for disciplinary actions against state college personnel. He views the executive order as an administrative interpretation that removal from a departmental chairmanship is a disciplinary action, i.e., a dismissal or demotion within the scope of Education Code section 24306. The argument begs the question. It assumes that a department chairman as such is a "permanent or probationary employee" within the purview of that statute. It ignores the chairmanship's character as an academic-administrative assignment defined by section 42700(p)(1) (fn. 5, *ante*).

■ Independently of statute, a public employee may be constitutionally entitled to protection against arbitrary changes in job status and constitutionally entitled to notice and hearing. Public employment may not be conditioned upon a waiver of constitutional rights; unless a compelling public interest intervenes, a public employee may not be dismissed for the exercise of constitutional freedoms. (*Bekiaris* v. *Board of Education,* 6 Cal.3d 575, 585-586 [100 Cal.Rptr. 16, 493 P.2d 480]; *Bagley* v. *Washington Township Hospital Dist.,* 65 Cal.2d 499, 503-504 [55 Cal. Rptr. 401, 421 P.2d 409].) Plaintiff does not allege and there is no finding that his removal as chairman of the English department was a reprisal for his exercise of constitutional freedoms.

An additional constitutional limitation may rest on the concept that the due process clause of the Fourteenth Amendment prevents any govern-

istrative employee" separately from "academic-administrative assignment." (See Cal. Admin. Code, tit. 5, § 42700, subds. (m) and (p).) The possible application of the reassignment procedure is of no moment here, because Dr. Zumwalt makes no claim that his professorship (which, indeed, he never left) was not commensurate with his qualifications.

ment official from depriving another of public employment arbitrarily, that is, without regard to his fitness and suitability. (See, e.g., *Wieman* v. *Updegraff,* 344 U.S. 183 [97 L.Ed. 216, 73 S.Ct. 215]; *Slochower* v.. *Board of Education,* 350 U.S. 551 [100 L.Ed. 692, 76 S.Ct. 637]; *Wilson* v. *City of Los Angeles,* 54 Cal.2d 61 [4 Cal.Rptr. 489, 351 P.2d 761]; *Hollon* v. *Pierce,* 257 Cal.App.2d 468 [64 Cal.Rptr. 808].) The California Supreme Court has rejected that concept where the status is held at the pleasure of the appointing power. (*Bogacki* v. *Board of Supervisors, supra,* 5 Cal.3d 771; see also, *Board of Education* v. *Swan,* 41 Cal.2d 546 [261 P.2d 261].) ▮ When a faculty member in the California state college system becomes a department chairman, he accepts an academic-administrative assignment under a published, codified governing rule which permits the college president to remove him "at any time" with the consent of the chancellor. (Cal. Admin Code, tit. 5, § 43594, fn. 6, *ante.*) Having accepted the chairmanship at the pleasure of the college president, the faculty member may not later claim constitutional protection against deprivation at the pleasure of the college president.

▮ Aside from substantive protection against arbitrary deprivation, a state college faculty member may claim procedural due process, that is, notice and hearing, before deprivation of an employment endowed with formal or de facto tenure. Recent decisions of the federal Supreme Court, *Board of Regents* v. *Roth, supra,* and *Perry* v. *Sindermann, supra,* reject entitlement to notice and hearing when the administration refuses to renew a nontenured teacher's annual contract. The theory is that renewal of a nontenured teacher's contract is not an element of "liberty" or "property" within the scope of the Fourteenth Amendment. ▮ Plaintiff Zumwalt accepted chairmanship of the English department under a set of governing rules which endowed him with no tenure, formal or de facto. His temporary, nontenured status did not entitle him to pretermination notice and hearing. (*Board of Regents* v. *Roth, supra.*)

▮ A constitutional right to procedural due process exists when the state accompanies its action with charges which might seriously damage the individual's reputation or career. (*Board of Regents* v. *Roth, supra,* 408 U.S. pp. 572-574 [33 L.Ed.2d pp. 558-559].) "Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." (*Wisconsin* v. *Constantineau,* 400 U.S. 433, 437 [27 L.Ed.2d 515, 519, 91 S.Ct. 507], quoted in *Board of Regents* v. *Roth, supra,* 408 U.S. at p. 572 [33 L.Ed.2d at p. 558].) In such a case due process demands

an opportunity to refute adverse claims at a hearing whose only purpose (if job reinstatement is not possible) is to clear the individual's name.[12]

In the trial court the college authorities presented no evidence of reasons for Dr. Zumwalt's removal. Approximately two weeks earlier he had sent a letter to president Baxter requesting the president to meet with representatives of the English department faculty to discuss the continued employment of a probationary professor. A copy of the letter was published in the student newspaper. According to Dr. Zumwalt, he did not provide the newspaper with the letter. The president refused to meet with the faculty representatives. Dr. Zumwalt's removal followed.

 Although no charges were made, Dr. Zumwalt's removal was accomplished in a manner damaging to his reputation and career. "Reassignment" or "termination of an academic-administrative assignment" are euphemistic legalisms when used to describe an action accompanied by campus police, changed locks and sealed files. Without some showing of justification, the method chosen by the college administration appears as a gross violation of academic amenities. Without revealing the existence or nonexistence of charges, the method of removal was as damaging as though serious charges had in fact been made. The show of force implied that force was necessary; resort to locks implied that locks were necessary.

Dr. Zumwalt's removal and its concomitants of policemen, changed locks and sealed files had wide publicity and excited much comment. Descriptions of the incident were carried in San Francisco, Los Angeles and Fresno newspapers and distributed by Associated Press and a college press service. Publicity appeared in such distant publications as The New Yorker magazine and a Charlottesville, Virginia, newspaper. Various faculty organizations and students met in protest. The published stories revealed that 13 faculty members at Fresno State College were dismissed at about the same time. One official connected with the college system was quoted in praise of the weeding out of "loose nuts on the faculties." ██ Other accounts referred to the events as a "purge" of liberals.[13]

---

[12]The majority decision in *Roth* declares: "The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons." (*Board of Regents* v. *Roth, supra,* 408 U.S. at p. 573, fn. 12 [33 L.Ed.2d at pp. 558-559].)

[13]The Attorney General suggests that the newspaper publicity was hearsay. It was not offered for a hearsay purpose but as circumstantial evidence of wide notoriety harmful to Dr. Zumwalt's reputation. In view of the claim to procedural due process evoked by damage to the subject's career and reputation, the newspaper publicity was a relevant "operative fact" and outside the scope of the hearsay rule. (Witkin, Cal. Evidence (2d ed. 1966) §§ 463-464.)

■ Whether reviewing the transcript of an administrative hearing or an evidentiary record in the trial court, this court has the power and duty to review a public employee's deprivation of status which has occurred under circumstances suggestive of a constitutional violation. (*Bekiaris* v. *Board of Education, supra,* 6 Cal.3d at p. 591.) We are also empowered to make findings of fact contrary or in addition to those of the trial court. (Cal. Const., art. VI, § 11; Code Civ. Proc., § 909.) ■ We find that the college administration's choice of method for Dr. Zumwalt's removal exposed him to notoriety in the academic community, damaged his reputation and tended to handicap him in career advancements during the remainder of his academic career.

As a result of the removal procedure selected by the college administration, due process entitled petitioner to a hearing at which the administration would be required to prove, if it could, justification for its procedure and at which petitioner might prove, if he could, lack of justification. He has never had that hearing and is now entitled to it. Because petitioner held his assignment as departmental chairman at the pleasure of the college president, the hearing cannot result in his restoration to that assignment. As observed in *Board of Regents* v. *Roth, supra,* sole purpose of the hearing is to provide petitioner "an opportunity to clear his name." (Fn. 12, *ante.*)

■ The hearing has its source in the constitutional guarantee of due process of law and is not governed by any of the statutes or rules covering disciplinary or tenure proceedings. As the administrative agency in charge of the state university and colleges, the board of trustees is the appropriate fact-finding body. The trustees have the investigative powers of a department head and may designate a subordinate to conduct a hearing and prepare recommended findings. (Ed. Code, § 23615; Gov. Code, §§ 11180-11182.) We shall remand the case to the trial court for the issuance of a writ which will direct a hearing and rendition of findings and will retain jurisdiction to establish any procedures appropriate to fulfillment of the objectives of procedural due process.

As noted earlier, Executive Order No. 113, containing directions for disciplinary action against college personnel, is not directly applicable. Nevertheless, it describes notice and hearing procedures which might in part be adapted to the needs of the present case. Of particular note is the provision for use of independent hearing officers employed by the Office of Administrative Hearings in the Department of General Services. Of possible utility are grievance procedures for academic personnel issued by the chancellor in compliance with a rule adopted by the trustees. (Cal. Admin. Code,

tit. 5, § 42714.) The grievance procedures are not included in the record and we refer to them only for the information of the trial court and parties.

The cause is remanded to the trial court with directions to vacate its prior writ of mandate, to issue a peremptory writ of mandate consistent with this opinion and to make such future orders as may be appropriate to guide the parties in carrying out the objectives of the writ. The defendants (appellants in this court) will bear costs of appeal.

Richardson, P. J., and Janes, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 19, 1973.