48 Cal.App.3d 793 (1975)
121 Cal. Rptr. 918
RONALD DOUGLAS ARROYO, Plaintiff and Appellant,
v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., Defendants and Respondents.
Docket No. 35769.
Court of Appeals of California, First District, Division Three.
May 16, 1975.
*795 COUNSEL
Panetta, Thompson & Panetta and Leon E. Panetta for Plaintiff and Appellant.
Donald L. Reidhaar, Milton H. Gordon, Aletha R. Titmus and John F. Lundberg for Defendants and Respondents.
OPINION
SCOTT, J.
Ronald Arroyo appeals from judgment of dismissal entered upon sustaining of defendants' demurrer without leave to amend, and further from the granting of defendants' motion for summary judgment.
I. (1) In an action for declaratory relief, either a general demurrer or a motion for summary judgment is an appropriate proceeding to declare the rights of the parties if they can be determined as a matter of law.
Regarding the propriety of the general demurrer, the court in Taschner v. City Council (1973) 31 Cal. App.3d 48 [107 Cal. Rptr. 214] stated (at *796 p. 57): "Strictly speaking, a general demurrer is not an appropriate means of testing the merits of the controversy in a declaratory relief action because plaintiff is entitled to a declaration of his rights even if it be adverse. (Salsbery v. Ritter, supra, 48 Cal.2d 1, 7; Bennett v. Hibernia Bank, supra, 47 Cal.2d 540, 550.) However, where the issue is purely one of law, if the reviewing court agreed with the trial court's resolution of the issue it would be an idle act to reverse the judgment of dismissal for a trial on the merits. In such cases the merits of the legal controversy may be considered on an appeal from a judgment of dismissal following an order sustaining a demurrer without leave to amend and the opinion of the reviewing court will constitute the declaration of the legal rights and duties of the parties concerning the matter in controversy. (Cherry v. Home Sav. & Loan Assn., 276 Cal. App.2d 574, 578 [81 Cal. Rptr. 135]; Haley v. L.A. County Flood Control Dist., 172 Cal. App.2d 285, 292-294 [342 P.2d 476]; see Greenberg v. Hollywood Turf Club, 7 Cal. App.3d 968, 979 [86 Cal. Rptr. 885].)" (See also California State Employees' Assn. v. Flournoy (1973) 32 Cal. App.3d 219, 240-241 [108 Cal. Rptr. 251]; Stribling v. Mailliard (1970) 6 Cal. App.3d 470, 475 [85 Cal. Rptr. 924]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 730-732, pp. 2350-2354.)
Regarding the summary judgment procedure, in a declaratory relief action the court in Walker v. Munro (1960) 178 Cal. App.2d 67 [2 Cal. Rptr. 737] stated (at pp. 70-71): "If there is a jurisdictional defect not apparent on the face of the complaint, or if the relief sought is dependent upon facts which are shown by uncontradicted affidavits not to exist, or if it appears that in the particular case the court desires to exercise the discretion invested in it by section 1061, Code of Civil Procedure, there is no reason why the case should be prolonged and a summary judgment not granted." (See also 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, §§ 173-175, pp. 2825-2828.) As provided in Code of Civil Procedure section 437c: "Such motion shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
Here, both general demurrer and motion for summary judgment, supported by affidavits and counteraffidavits filed, were pled and decided concurrently. Appellant would urge that certain material facts are disputed and as such summary judgment procedure is inappropriate. Without detailing the alleged disputed "facts" here, it is clear the appellant misunderstood the dispute to be one as to the facts. From our review of all of the pleadings and affidavits, including the transcript of *797 the hearing before the personnel appeals committee, it is clear that the only issues raised by the parties are ones of law, not fact, and the court below properly ruled on the rights of the parties relative thereto. As the dispute is, in actuality, over questions of law, we review the trial court's determination of those questions.
The uncontroverted allegations of the parties reveal the following: Appellant was a nonacademic employee hired by respondent university in October 1969 for an indefinite period. He was terminated effective January 11, 1973, in accordance with an appropriate notification by letter dated December 27, 1972. The reasons for his termination were set forth at length in a confidential communication to appellant, and are synopsized in the letter as follows: "The reasons for this action are many and varied. Essentially, however, it is the area of management, organization, and vital operational aspects in which I find a loss of confidence and support in your performance. You and I have discussed these matters often and in our almost weekly meetings since July 1971, when a 2-1/2% merit increase was awarded, and in July 1972, when no merit increase was recommended. Administrative time of the Accounting and Business Services staffs on financial aid matters has consumed much time and effort. I have received from other University officers and students many letters of concern over your management and operation of the Financial Aid Office during the last two-year period."
Appellant was also advised of his right to appeal the dismissal action pursuant to University of California Staff Personnel Policy No. 280 and Grievance Appeals Procedure, Staff Personnel, Santa Cruz. Appellant availed himself of the appeal procedure, resulting in a hearing where both appellant and respondents offered evidence. Ultimately, on July 27, 1973, University of California President Hitch upheld the decision to terminate appellant.
II. Appellant asserts that he did not receive a pretermination hearing to which, he argues, he was constitutionally entitled. Respondents correctly urge that at most appellant was entitled to a post-termination hearing, which he received. Although appellant urges in his complaint that he had "achieved career status" and urges this to be a question of fact to be determined at trial, it is clear that the only possible employment status he enjoyed was that of a nontenured indefinite employee. As such, he was not entitled to a predismissal hearing.
*798 The legal effect of the status of an "indefinite" nonacademic employee has been resolved. In Ishimatsu v. Regents of University of California (1968) 266 Cal. App.2d 854 [72 Cal. Rptr. 756], hearing denied (referred to without disapproval in Regents of University of California v. Superior Court (1970) 3 Cal.3d 529, 534 [91 Cal. Rptr. 57, 476 P.2d 457]), the court dealt with a nonacademic employee, a librarian, whose term of employment was "indefinite" (pp. 856, 858). The court stated (at p. 861): "However, despite the rule that public employees serving at the pleasure of the appointed authority may be terminated without cause and without notice or hearing, it must be noted: `... the power [to dismiss public employees] may not be exercised arbitrarily in disregard of the employee's constitutional rights. [sic] (Bagley v. Washington Township Hospital Dist., 65 Cal.2d 499, 503-504 [55 Cal. Rptr. 401, 421 P.2d 409]; Rosenfield v. Malcolm, 65 Cal.2d 559, 562-563 [55 Cal. Rptr. 505, 421 P.2d 697] or statutory rights. (International Assn. of Fire Fighters v. County of Merced, 204 Cal. App.2d 387, 395 [22 Cal. Rptr. 270].) Recent decisions have discredited the notion that the power to dismiss a public employee without cause includes the power to dismiss for any cause.' (Ball v. City Council, 252 Cal. App.2d 136, 141 [60 Cal. Rptr. 139].) [¶] Appellant here was not discharged in violation of any public policy, statutory or contractual right. She was discharged because she lacked supervisorial qualifications. She has not been deprived of the right to work as a librarian. It was only her employment at the University that was terminated." (Bagley and Rosenfield, upon which Ishimatsu relied, were recently referred to without disapproval in Adcock v. Board of Education (1973) 10 Cal.3d 60, 66 [109 Cal. Rptr. 676, 513 P.2d 900].)
(2) Here, there are no allegations that Arroyo was discharged in violation of any public policy, statutory or contractual right; nor that he was terminated because he exercised any constitutional rights. (Cf. Perry v. Sindermann (1972) 408 U.S. 593 [33 L.Ed.2d 570, 92 S.Ct. 2694]; Bekiaris v. Board of Education (1972) 6 Cal.3d 575 [100 Cal. Rptr. 16, 493 P.2d 480].) As an indefinite employee Arroyo had no legitimate claim of entitlement to continued employment. As a matter of law, the "indefinite" status of Arroyo did not require a prior hearing.
III. The right to a post-dismissal hearing was considered in Zumwalt v. Trustees of Cal. State Colleges (1973) 33 Cal. App.3d 665 [109 Cal. Rptr. 344], where there was considerable notoriety (nationwide), with multiple aggravating facts, including locking the professor out of his office. The court stated: "`Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, *799 notice and an opportunity to be heard are essential.' (Wisconsin v. Constantineau, 400 U.S. 433, 437 [27 L.Ed.2d 515, 519, 91 S.Ct. 507], quoted in Board of Regents v. Roth, supra, 408 U.S. at p. 572 [33 L.Ed.2d at p. 558].) In such a case due process demands an opportunity to refute adverse claims at a hearing whose only purpose (if job reinstatement is not possible) is to clear the individual's name." (33 Cal. App.3d at pp. 678-679.)
This concept of post-dismissal hearing was discussed in Arnett v. Kennedy (1974) 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633]. The court stated (at p. 157): "Since the purpose of the hearing in such a case is to provide the person `an opportunity to clear his name,' a hearing afforded by administrative appeal procedures after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause."
(3) We have doubt in the instant case whether Arroyo has sufficiently pled, or whether the facts set forth in the affidavits establish for Arroyo, a "due process" right to a post-dismissal hearing. That is, we doubt whether the confidential letter to Arroyo detailing his inadequacies sufficiently drew into question his "good name, reputation, honor or integrity" so that he would be entitled to even a post-termination hearing. It is clear, however, that such right exists under the grievance appeals procedure promulgated by the Regents of the University of California. In any event, we conclude that Arroyo received a sufficient due process post-dismissal hearing, as next discussed.
IV. (4) Appellant urges that in accordance with the authorities cited the burden of proof is on respondents, but at the hearing the personnel appeals committee placed the burden on him.[1]
This allegation is not supported by the transcript of that hearing. As stated in Zumwalt, "due process entitled petitioner to a hearing at which the administration would be required to prove, if it could, justification for its procedure and at which petitioner might prove, if he could, lack of justification." (33 Cal. App.3d at p. 680.)
Although appellant was required to proceed with his evidence first, it is clear from the transcript that respondents acknowledged their obligation, as counsel for respondents stated at the commencement of the hearing: "His [Arroyo's] position, we take it to be, that the University *800 acted unreasonably in terminating him and, therefore, he should go forward to establish this alleged unreasonable action. Once he has presented his case, then we will present our case to show, we hope, that the action was not unreasonable" (italics added); and further, at the conclusion of the hearing: "But we do know this  as you will see from reviewing the records of the evidence  that it is overwhelming that the University administration and the action that it took, finally, did not act unreasonably in terminating him, and this of course is what you are here to decide."
At the hearing, the administration apparently proved justification for its dismissal.
The grievance committee in its findings[2] stated: "Mr. Arroyo was sincere and honest in his efforts to manage the Financial Aids Office, but due to lack of experience and certain managerial/supervisorial abilities, he was unable to overcome and manage the myriad problems inherent in this office."
Arroyo received his "opportunity to clear his name." Due process was satisfied.
Judgment is affirmed.
Draper, P.J., and Brown (H.C.), J., concurred.
NOTES
[1] We note that the charges of Arroyo's inadequacies were spelled out in some detail in his letter of dismissal, so he was fully aware of the basis for his dismissal.
[2] At the grievance committee's hearings both parties were represented by counsel during the 7-day period, which included 1,122 pages of transcript, wherein many witnesses were called for respondents and for appellant.