[No. A029908. First Dist., Div. Three. Dec. 4, 1986.]

ALEXANDER LUKIN, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

**COUNSEL**

Brad Yamauchi for Plaintiff and Appellant.

George Agnost and Louise H. Renne, City Attorneys, Mary J. Shea and Michael C. Killelea, Deputy City Attorneys, for Defendants and Respondents.

**OPINION**

**MERRILL, J.**—Appellant Alexander Lukin appeals from a ruling by the superior court denying his request for a writ of mandate pursuant to California Code of Civil Procedure section 1094.5. We affirm.

I

Appellant was first hired by the San Francisco Police Department (Department) as a Q2 police officer. He failed to pass the field training officer program (FTO Program) and was permitted to resign from employment without restriction to reapply for a police officer position at a later date. Appellant resigned from his Q2 police officer position in April 1981.

Near the end of May 1981, appellant was employed as a police radio dispatcher for the Department, allegedly to improve his communication skills as a radio dispatcher because he had trouble in this area while he was in the FTO Program. While employed as a police radio dispatcher, appellant was assigned to communications to answer telephone calls. As a dispatcher he had free access to the area where radios were stored and knew that persons

had to sign out for radios when they were issued. Soon after being employed, appellant began using police radios for personal purposes. He was often observed by his superiors using the radios for personal purposes, and was admonished to cease such activity.

On September 30, 1981, a radio was sent from Northern Station, Company E, to communications for servicing. The radio was sent out for repairs and then returned to communications. The radio was not returned to Company E, and a lost property report was made for the radio.

While appellant was employed as a dispatcher, he had used the radio in question, allegedly to improve his communication skills, and had later hidden the radio behind the pneumatic conveyer in communications.

On November 16, 1981, appellant was reemployed by the Department as a Q2 police officer. While in the FTO Program the second time, appellant went to communications to see if he could listen in on radio transmissions. Appellant found that the radio he had hidden behind the pneumatic conveyer while he was a radio dispatcher was still there, so he took the radio home without authorization.

The radio was later discovered in appellant's home by Sergeant Alan Perini and Sergeant Walter Cullop of the Department while they were investigating an unrelated incident. Appellant admits that he had taken the radio at least three to six weeks prior to its discovery in his home, and that he also took fresh batteries from Central Station for the radio. He claims that he took the radio home to practice listening to radio transmissions because he had trouble in this area during his first FTO Program.

While still under probationary status,[1] appellant was charged with violating rule A-23 (unauthorized use of Department property) and rule A-9 (engaging in conduct which tends to subvert the good order, efficiency, or discipline of the Department) of general order D-1 of the Department. At that time, Officer Robert Barry, who was then the president of the San Francisco Police Officers' Association, spoke informally to Chief of Police Cornelius P. Murphy about the charges filed against appellant. Officer Barry asked Chief Murphy what his recommendation to the San Francisco Police Commission (Commission) would be if appellant was found guilty of the

---

[1]San Francisco Charter section 8.340 provides for a 12-month probationary period for uniform members of the Department: "Any person appointed to a permanent position shall serve a probationary period. The civil service commission shall by rule establish a probationary period of not less than six months service and up to a maximum of twelve months service for each classification, provided that the probationary period for entrance positions in the uniform rank of the police department . . . shall be for one year."

charges against him. In respect to this conversation with Officer Barry, Chief Murphy testified as follows: "I think I told him that based on the information that I had before me at the time, I wouldn't be inclined to recommend termination."

Subsequent to this informal discussion with Officer Barry, Chief Murphy discussed the charges against appellant with Deputy Chief James Shannon and Captain Victor Macia, the officer in charge of the FTO Program during appellant's first employment as a Q2 police officer.

On November 3, 1982, the Commission held a hearing on appellant's case. At the hearing, appellant admitted the charges made against him, and chose only to offer evidence in mitigation of the penalty. He did present the testimony of Officer Stephen Venters, his training officer for four weeks during the second phase of appellant's second FTO training. Venters testified that appellant's performance had been acceptable during the four-week training period that Venters had observed him and that appellant did not have any difficulty with radio communication during the period of Venter's observation.

Appellant further presented the testimony of Officer Richard Reyes, his field training officer during his first attempt to become a police officer. Reyes testified that after four weeks of observing appellant, he did not note any problems with appellant's use of the radio.

At the conclusion of the hearing, Police Chief Cornelius Murphy recommended appellant's termination from employment with the Department. Neither appellant nor his counsel raised an objection to Chief Murphy's recommendation. In making such recommendation, Chief Murphy pointed out that the radio was a $2,000 piece of equipment, and that there was a critical shortage of radios in the Department. Prior to recommending termination, Chief Murphy considered the information relayed to him by Deputy Chief Shannon and Captain Victor Macia, and he took into account all the evidence regarding appellant's alleged wrongdoings. In reaching their decision to terminate appellant's employment as a police officer with the Department, effective that evening, the Commission took into consideration all the evidence presented at the hearing by both appellant and respondents.

Thereafter, appellant petitioned the superior court for a writ of mandate pursuant to Code of Civil Procedure section 1094.5. He petitioned the court to reverse the decision of the Commission terminating his employment as a police officer, or in the alternative, order the Commission to grant him a new hearing.

The court found from an independent review of the administrative record that the weight of the evidence supported the Commission's decision and denied his petition. Final judgment denying appellant's petition was issued, and appellant filed a timely notice of appeal.

## II

■ On appeal, no claim is made that there is not ample evidence supporting the Commission's decision to terminate him; instead, he contends that his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and under the California Constitution were denied as he was neither given a fair hearing before the Commission nor given the right to cross-examine witnesses and produce evidence in refutation of the charges against him. He further argues that he was denied due process as there was a deprivation of liberty when he was stigmatized as a result of the termination. We disagree.

Contrary to appellant's contention, the record clearly indicates that appellant was afforded a fair hearing before the Commission. At the hearing, appellant was represented by counsel and had every opportunity to bring forth witnesses and present evidence to refute the charges made against him; however, he chose not to do so. The record further shows that at the hearing appellant confronted and cross-examined Captain Macia and did present, on his behalf, testimony of a number of witnesses; yet in fact, their testimony contradicted appellant's alleged excuse that he was having difficulty using radios.

In respect to the claim that he was stigmatized, most detrimental to appellant's case is his acknowledgment that there is evidence in the administrative record to support the Commission's determination to terminate his employment as a police officer with the Department.

Dispositive of this issue on appeal is *Codd* v. *Velger* (1977) 429 U.S. 624 [51 L.Ed.2d 92, 97 S.Ct. 882]. In *Codd*, the United States Supreme Court held that an employee must deny the allegations forming the basis of his discharge in order to invoke his constitutional right to liberty. (Accord *Browning* v. *Block* (1985) 175 Cal.App.3d 423, 428 [220 Cal.Rptr. 763].)

The Supreme Court further held that although there are situations where a probationary employee may not be discharged without opportunity for hearing if the discharge inflicts a stigma, such opportunity is not required when the employee does not deny the allegations which give rise to a stigma, where the sole purpose of the hearing would be to clear the employee's name, and that purpose cannot be achieved if the allegations are undenied.

(*Codd* v. *Velger, supra,* 429 U.S. 624, at pp. 627-628 [51 L.Ed.2d at pp. 96-97].)

In that case, the respondent, Elliot H. Velger, was a probationary patrolman with the New York City Police Department, until he was dismissed abruptly after three years of employment with the department. He had only five more months to serve on his probationary period. Subsequently, he filed suit, alleging that he had been wrongfully dismissed without a hearing or a statement of reasons from his position as a patrolman with the department. He petitioned the court to grant him a hearing to refute whatever allegations were made against him.

While prosecuting his suit, Velger sought other employment. He was later employed by the Penn Central Railroad as a patrolman-watchman. But after 60 days with Penn Central, he was dismissed because of the results of an inspection of his personnel record in the New York City Police Department. He had granted Penn Central authorization to see his records on file at the New York City Police Department.

From an examination of the file, Penn Central discovered that Velger had been dismissed as a patrolman because while still under probationary status, he had placed a revolver to his head in an apparent suicide attempt. In his lawsuit for wrongful dismissal from the New York City Police Department, Velger did not refute the above incident, but contends that the information created a stigma for future employment as a law officer, and that his due process rights under the Fourteenth Amendment to the United States Constitution were violated. He argued that he was entitled to a hearing due to the stigmatizing effect of certain material placed by the New York City Police Department in his personnel file.

The Supreme Court disagreed and stated in relevant part that "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.' [Citation.] 'The purpose of such notice and hearing is to provide the person an opportunity to clear his name,' [citation]. But if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation. Nowhere in his pleadings or elsewhere has respondent affirmatively asserted that the report of the apparent suicide attempt was substantially false. Neither the District Court nor the Court of Appeals made any such finding. When we consider the nature of the interest sought to be protected, we believe the absence of any such allegation or finding is fatal to respondent's claim under the Due Process Clause that he should have been given a hearing. . . . [¶] But the hearing required where a

nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his name.' If he does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him." (*Codd* v. *Velger, supra,* 429 U.S. at pp. 627-628 [51 L.Ed.2d at pp. 96-97].)

Applying *Codd* to the issue that he was stigmatized by the dismissal, appellant has no basis to argue for either a new hearing or a reversal of the Commission's decision to terminate his employment with the Department. Moreover, appellant's argument that he was denied his due process rights because he was not given a fair hearing is unpersuasive.

Unlike the respondent in *Codd,* appellant was given a fair hearing before the Commission. He was represented by counsel, and during the hearing, had every opportunity to produce evidence refuting the charges against him, yet he chose not to do so.

Like the respondent in *Codd,* appellant here was also an officer under probationary status. Appellant does not refute that there is evidence to warrant the Commission's determination to terminate his employment as a police officer with the Department. The due process clause of the Fourteenth Amendment only mandates that an opportunity be given to challenge and deny charges made against an employee. (*Codd* v. *Velger, supra,* 429 U.S. at p. 627 [51 L.Ed.2d at p. 96]; accord *Arroyo* v. *Regents of University of California* (1975) 48 Cal.App.3d 793 [121 Cal.Rptr. 918].) Moreover, in order for the due process clause to serve any purpose, some factual dispute must exist between the employer and the employee. (*Codd, supra,* at p. 627 [51 L.Ed.2d at p. 96].)

Since appellant concedes to be true the charges made against him and had the opportunity to confront witnesses and to present evidence in his defense, which he chose not to do, appellant has no basis to raise the umbrella of due process protection. Because there are no factual disputes remaining to be heard, we conclude that the trial court did not rule erroneously in denying appellant's petition for a writ of mandate, pursuant to California Code of Civil Procedure section 1094.5.

### III

■ Appellant next contends that he was "induced" by Police Chief Murphy into "pleading guilty" to the charges made against him. He argues this point by analogizing criminal law cases on involuntary confessions to

the case at bench. We disagree with appellant's contention and find his application of criminal law principles inappropriate.

Nowhere in the record does it show that Chief Murphy expressly discussed an "agreement" with appellant himself, that if appellant would "plead guilty," he would not be terminated but suspended from his employment as a police officer with the Department. As the record shows, the only discussion that took place regarding appellant's situation was between Officer Robert Barry and Chief Murphy; appellant played no role in the discussion whatsoever. In light of the facts presented, appellant was not "induced" into "pleading guilty" by Chief Murphy, as he alleges.

Furthermore, appellant's application of criminal law principles to the case at bench is unfounded. The law does not recognize application of criminal law principles of involuntary confessions to administrative proceedings such as the one before this court. Appellant was neither charged with criminal violations nor was he threatened with criminal prosecution to justify even remotely application of criminal law cases to our case. The flexibility of our legal system permits analogies which are relevant and pertinent; however, analogies that cannot reasonably be based on sound legal principles and logic will not be accepted by this court. Although appellant's application of criminal law principles of involuntary confessions to this case is novel, it is unfounded and unprecedented under law.

## IV

Appellant also contends that he has a constitutional due process right to the benefit of his "plea bargain." We disagree.

Appellant's assertions are neither supported by the law nor the facts in this case. Moreover, his "plea bargaining" argument is not a procedure recognized in administrative proceedings such as the case at bench. It is an aspect of criminal law and criminal procedure and does not involve employee disciplinary hearings. Therefore, we conclude that appellant's argument regarding any sort of "plea bargaining" is misplaced and unsupported by competent legal authority.

## V

Appellant also contends that his reliance on Chief Murphy's statement of not recommending termination but suspension in light of the evidence available at the time, caused him to forfeit his due process rights to produce evidence in his defense and to confront adverse witnesses during the Commission's hearing. We disagree.

Appellant's reliance on Chief Murphy's statement is unrealistic and unreasonable. Appellant knew or should have known that the statement was inconclusive at best and could not be considered a promise or agreement by Chief Murphy.

First, it was only said in light of the evidence that was before the chief *at the time* he spoke with Officer Barry. Appellant at that point knew that the investigation had not been completed and that more information was required to clarify the situation.

Secondly, appellant did not discuss the matter with Chief Murphy personally. The record shows that it was Officer Barry who advised and informed appellant that if the latter would "plead guilty," the chief would not recommend termination but suspension. Furthermore, the conversation between Officer Robert Barry and Chief Murphy is insignificant because Barry knew or should have known that Chief Murphy was only making a tentative conclusion without having the opportunity to consult with other officers and hear all the evidence.

Third, appellant knew that a statement by Chief Murphy is not conclusive as to the decision-rendering process of the Commission.

Section 8.343 of the Charter of the City and County of San Francisco reserves to the Commission the discretion of whether to accept or reject the police chief's recommendation to terminate. It states in pertinent part: ". . . members of the uniformed ranks of either department shall not be subject to dismissal, nor to punishment for any breach of duty or misconduct, except for cause, not until after a fair and impartial trial before the commissioners of their respective departments, upon a verified complaint filed with such commission setting forth specifically the acts complained of, and after such reasonable notice to them as to time and place of hearings as such commission may, by rule, prescribe. The accused shall be entitled, upon hearing, to appear personally and by counsel; to have a public trial; and to secure and enforce, free of expense, the attendance of all witnesses necessary for his defense."

The recommendation of the chief of police is not a mandate which the Commission must follow. There are occasions when the chief of police will offer a recommendation which the Commission will not accept. The record shows that appellant was aware that there are instances when the Commission refused to follow the chief's recommendations to terminate employment of police officers found guilty of the charges against them.

The fact that the recommendation of the police chief is nonbinding on the Commission is further corroborated by the Commission's letter of March

21, 1983, wherein the secretary to the Commission, Lieutenant William E. Frazier, advised appellant that the police commissioners had taken into consideration appellant's position that he did not receive a due process hearing and had decided to deny petitioner's request for rehearing. Lieutenant Frazier expressly stated that: "It is the feeling of the Police Commission that Officer Lukin did receive due process and even though the recommendation of Chief Murphy was taken into consideration by the Commission it did not necessarily mean that the commissioners followed that recommendation to the letter."

The totality of the circumstances and the convincing evidence in the record make it clear that appellant's due process rights were not denied and that his reliance on Chief Murphy's statement to Officer Barry was unreasonable and unjustified.

## VI

Appellant also argues that public policy and the interests of justice require that appellant receive either a new hearing before the Commission or "other relief." We find this contention to be without merit.

Our courts have consistently recognized that peace officers hold a peculiar and delicate position in society involving a high degree of public trust and confidence. Because of the faith entrusted in our law enforcement agencies, our courts have always upheld the application of very strict standards in reviewing the conduct of police officers.

In *McCain* v. *Sheridan* (1958) 160 Cal.App.2d 174 [324 P.2d 923], a police officer was dismissed for conduct unbecoming a police officer. There, the court said in part: ". . . [A] member of the police force must be above suspicion of violation of the very laws he is sworn and empowered to enforce. The efficiency of our system of administration of justice depends, in large part, upon police officers' faithful discharge of the trust reposed in them. [Citation.] Neither their number nor their arms will long sustain them in upholding the law if only the ultimate sanction of force is available to them. Rather, they can perform their duties only if they merit the trust and confidence of the mass of law-abiding citizens. Whatever weakens that trust tends to destroy our system of law enforcement. Accordingly, the courts have long recognized that a policeman's tenure of office may be terminated for derelictions far less serious than violation of the criminal statutes governing citizens generally." (*Id.*, at p. 177.)

In the case at bench, the evidence is undisputable that appellant, as a probationary police officer, took Department property to his home for his

personal use and deprived the Department of the use of essential equipment, all in violation of Department regulations. This amounted to a flagrant violation of the trust and confidence that is bestowed upon him as a police officer.

Judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.