[Civ. No. 12681. Third Dist. Mar. 27, 1972.]

SERVICE EMPLOYEES' INTERNATIONAL UNION,
LOCAL NO. 22, AFL-CIO, Plaintiff and Appellant, v.
ROSEVILLE COMMUNITY HOSPITAL, Defendant and Respondent.

COUNSEL

Levy & Van Bourg and Stewart Weinberg for Plaintiff and Appellant.

Musick, Peeler & Garrett, William J. Emanuel and Robert J. Heil for Defendant and Respondent.

OPINION

WHITE, J.*—Appellant (Service Employees' International Union, Local No. 22. AFL-CIO) filed a petition for writ of mandate on July 16, 1969, seeking to compel the Roseville Community Hospital to meet, confer and negotiate with petitioner pursuant to the provisions of Government Code section 3500 et seq.[1] The hospital filed a motion for summary judgment and both sides submitted affidavits. The trial court granted the motion and appellant Union appeals, contending:

---

*Assigned by the Chairman of the Judicial Council.

[1]In general, the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3511) requires the governing bodies of public agencies to meet and confer in good faith regarding conditions of employment with representatives of recognized employee organizations. (Gov. Code, § 3505; see *Social Workers Union Local 535* v. *County of Los Angeles* (1969) 270 Cal.App.2d 65, 70 [75 Cal.Rptr. 566].)

1. The respondent hospital is an instrumentality of the City of Roseville and is subject to Government Code section 3500 et seq.

2. Such a governmental agency must recognize, meet and confer with the bargaining agent designated by its employees.

FACTS[2]

On November 23, 1950, the City of Roseville contracted with Walter J. Mezger, a qualified and experienced hospital consultant, to oversee the designing, planning, building, equipping and placing in operation a hospital in the city.

The hospital was completed, and on January 22, 1958,[3] an agreement for the operation of a municipal hospital was entered into by the City of Roseville and the Roseville District Hospital, a nonprofit hospital corporation (hereafter "corporation") in conformity with section 37654, Government Code, which provides: "The legislative body [of the City] may maintain the hospital or provide for its operation and maintenance by tenants. The legislative body may enter into leases of all or any part of the hospital for such purpose. Such lease shall not run for a term in excess of ten years."

The recitals to the agreement between the city and the corporation declare, in part, as follows:

"WHEREAS, the acquisition, construction, ownership, leasing, management, maintenance, operation, repair, addition, extension and improvement of a municipal hospital for public and private purposes is a municipal affair;

"WHEREAS, a municipal hospital was acquired and constructed from the proceeds of general obligation bonds of the City which were approved by a two-thirds vote of the voters voting on such proposition, and there is presently outstanding bonded indebtedness of $200,000;

"WHEREAS, the maintenance and operation of the said hospital has been carried on by the Corporation [Roseville District Hospital][4] pursuant to agreement duly made and executed by and with the City;

---

[2]The facts are taken from the affidavits of the opposing parties and the documents attached thereto.

[3]Section 3500 et seq. of the Government Code was not enacted until 1961. (Stats. 1961, ch. 1964, § 1.)

[4]Apparently, a previous lease had been entered into between the city and the corporation but such is not a part of the record.

"WHEREAS, certain additions and extensions to the said hospital have been made by the Corporation from the proceeds of gifts and grants to, and revenues of, the hospital; and

"WHEREAS, the City proposes to issue hospital revenue bonds to finance the cost of certain additions, extensions, improvements and betterments required by the hospital in order to better serve the needs of its residents and to provide that the principal and interest of said bonds shall be paid from the gross revenues of the hospital; . . ."

The agreement then goes on to delineate the rights, duties and obligations of the city and the corporation, respectively. Some of the matters covered are as follows: The corporation is charged with the administration, maintenance and operation necessary for the economical and efficient functioning of the hospital. The corporation is given the authority to establish rules for the management of the hospital, with full control to appoint and dismiss members of the staff, both professional and other, and to prescribe rates and charges.[5] The corporation is required to obtain liability insurance for the protection of the interests of both the corporation and the city. The city is required to obtain building and equipment insurance. However, the cost of this insurance is deemed to be a proper operating expense and the corporation is required to reimburse the city. The corporation is required to furnish the city quarterly and annual audit reports. All equipment or facilities purchased by the city or the corporation are the property of the city. Except as provided in the agreement, the city agreed not to interfere in the administration, maintenance and operation of the hospital by the corporation.[6] Out of the revenues, the corporation is required to pay the city amounts sufficient to pay maturing installments of principal and interest on the city's outstanding bonds. In the event of a breach of the agreement, the city reserved the right to terminate the agreement and take over operation of the hospital.

In his affidavit, Jerome A. Herzog, Administrator of Roseville Community Hospital, stated as follows: Roseville Community Hospital is a private, nonprofit corporation organized under the California general nonprofit corporation law. Prior to February 4, 1969,[7] the name of the

---

[5]These charges, however, "shall be sufficient with other revenues received, to provide net revenues equal to not less than 1.5 times the average annual amount of principal and interest due in any fiscal year on revenue bonds of the City issued for hospital purposes."

[6]One exception is with regard to securing the rights of the city's bondholders.

[7]Petitioner filed suit on July 16, 1969.

corporation was "Roseville District Hospital." However, despite the name, the corporation has since its inception been a private, nonprofit corporation and has never been a "hospital district" within the meaning of section 32000 of the Health and Safety Code. The corporation operates a hospital facility which is owned by and leased from the City of Roseville under a lease agreement dated January 22, 1958.[8] It pays the city a monthly rental which the city applies to bonds used to finance the hospital facility. The corporation's activities and policies are governed by an independent board of directors, and it exercises complete responsibility for the administration, operation and maintenance of the hospital.[9] It has and exercises complete control over the hiring and discharge of all personnel in the hospital.

### Nature of the Hospital

Appellant contends the corporation (Roseville Community Hospital) qualifies as a public agency under section 3501 of the Government Code, and therefore must meet and confer with the bargaining agent designated by its employees.

Section 3501 of the Government Code provides, in part, as follows: "As used in this chapter: . . . (c) . . . 'public agency' means the State of California, every governmental subdivision, every district, every public and quasi-public corporation, every public agency and public service corporation and every town, city, county, city and county and municipal corporation, whether incorporated or not and whether chartered or not."[10]

Appellant argues that the corporation should be treated as a public agency or as an agency engaged in state action for the purposes of the Meyers-Milias-Brown Act. In this connection, it notes the premises and facilities of the hospital are owned by the city, and that the hospital was originally constructed with funds raised by the voters in a municipal election. It notes the lease agreement itself states the operation of a hospital is a "municipal affair." It is the contention of appellant that certain statutory and constitutional rights cannot be abrogated by this kind of delegation.

In this respect, appellant relies upon a line of cases involving private property rights versus rights protected under the First Amendment. (*Marsh* v. *Alabama* (1946) 326 U.S. 501 [90 L.Ed. 265, 66 S.Ct. 276]; *Food*

---

[8]According to an affidavit in opposition to the motion for summary judgment, the rental under the previous lease was at the rate of $1.00 per year.

[9]The city manager of Roseville made similar declarations.

[10]In denying the petition for writ of mandate, the trial court indicated that the Roseville Community Hospital would not qualify as a "quasipublic corporation."

*Employees* v. *Logan Valley Plaza* (1968) 391 U.S. 308 [20 L.Ed.2d 603, 88 S.Ct. 1601]; *Schwartz-Torrance Investment Corp.* v. *Bakery & Confectionery Workers' Union* (1964) 61 Cal.2d 766 [40 Cal.Rptr. 233, 394 P.2d 921]; *In re Lane* (1969) 71 Cal.2d 872 [79 Cal.Rptr. 729, 457 P.2d 561].) Based upon the holdings in these cases, appellant argues that private corporations may be held to the same standard of responsibility as governmental entities, and also contends there may be an obligation upon the part of private ownership to recognize constitutional and statutory rights existing in citizens coming into contact with the private company.

We think appellant's reliance upon this line of cases is misplaced. █ These cases establish the principle that when private property is held open for use by the general public to such an extent that it is deemed to be "quasi-public" property, the owner may not assert his technical property right to deny the exercise of First Amendment rights by the public on that property.

█ The instant case is not concerned with property rights, but rather whether the corporation falls within the purview of section 3501 of the Government Code. More importantly, this case, as presented, is not concerned with a conflict between private property and the exercise of First Amendment rights thereon where such property has been opened up to the public.[11] Rather, this case involves statutory interpretation in the light of the facts; it is not a case concerning the abridgment, through one guise or another, of First Amendment freedoms. We find no parallel.

Appellant also relies upon *Evans* v. *Newton* (1966) 382 U.S. 296 [15 L.Ed.2d 373, 86 S.Ct. 486]. In *Evans,* a testator devised to the City of Macon, Georgia, a tract of land to be used as a park for white people only. In order to perpetuate racial segregation, a suit was brought to remove the city as trustee and to appoint new trustees, to whom title to the park would be transferred. This was accomplished and upheld by the Georgia courts. The Supreme Court reversed, holding that the public character of the park required that it be treated as a public institution subject to the command of the Fourteenth Amendment, regardless of who presently had title under state law.

---

[11]*Marsh* v. *Alabama, supra* (distribution of religious literature on street of a company-owned town (freedom of press and religion)); *Food Employees* v. *Logan Valley Plaza, supra* (picketing supermarket in parcel pickup area (freedom of speech)); *Schwartz-Torrance Investment Corp.* v. *Bakery & Confectionery Workers' Union, supra* (picketing a bakery in a shopping center (freedom of speech)); *In re Lane, supra* (distribution of handbills on sidewalk designed to serve customers of a store (freedom of speech)).

"For years it [the park] was an integral part of the City of Macon's activities. From the pleadings we assume it was swept, manicured, watered, patrolled, and maintained by the city as a public facility for whites only . . . . The momentum it acquired as a public facility is certainly not dissipated ipso facto by the appointment of 'private' trustees. So far as this record shows, there has been no change in municipal maintenance and concern over this facility. Whether these public characteristics will in time be dissipated is wholly conjectural. If the municipality remains entwined in the management or control of the park, it remains subject to the restraints of the Fourteenth Amendment . . . . We only hold that where the tradition of municipal control had become firmly established, we cannot take judicial notice that the mere substitution of trustees instantly transferred this park from the public to the private sector." (382 U.S. 296, 301 [15 L.Ed.2d 373, 378].)

*Evans* is distinguishable on several grounds. First of all, *Evans* is a civil rights case fundamentally decided on Fourteenth Amendment principles. Secondly, there is not a shred of evidence in the record in our case that the lease by the city to the corporation was a sham or a subterfuge to avoid legal responsibilities. In fact, the operating lease was executed three years prior to the enactment of Government Code section 3500 et seq. Thirdly, as is apparent from the record, the city in the instant case is not actively involved in the operation of the hospital as was the city in *Evans* in the operation of the park.

Answering appellant's contentions, however, does not dispose of the primary issue, i.e., does the corporation fall within the definition of a "public agency" as defined in section 3501 of the Government Code? Looking at the language of the statute, the corporation would have to fall within the meaning of a "public corporation," "quasi-public corporation" or "public service corporation."

■ Public corporations are "those corporations formed for political and governmental purposes and vested with political and governmental powers." (*Bettencourt* v. *Industrial Acc. Com.* (1917) 175 Cal. 559, 561 [166 P. 323]; Accord, *Napa State Hospital* v. *Dasso* (1908) 153 Cal. 698, 703 [96 P. 355]; see *People* v. *Rinner* (1921) 52 Cal.App. 747, 752 [199 P. 1066].)

■ The terms "quasi-public corporations" and "public service corporation" as used in section 3501 still must have the characteristics of a "public agency" within the purposes for which the law was enacted, that is, to compel the governing bodies of public agencies to meet and confer in

good faith regarding conditions of employment with representatives of recognized employee organizations.

The state has established a policy favoring collective bargaining contracts (§ 923, Lab. Code), but in the absence of specific legislative authorization it is doubtful that public employees have the right to strike. (*Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684 [8 Cal.Rptr. 1, 355 P.2d 905]; *Nutter* v. *City of Santa Monica* (1946) 74 Cal.App.2d 292 [168 P.2d 741]; *Almond* v. *County of Sacramento* (1969) 276 Cal.App.2d 32 [80 Cal.Rptr. 518].)

The overall purpose of Government Code section 3500 et seq., was to establish a procedure for discussion of working conditions, etc., by organizations representing employees who are without the traditional means of enforcing their demands by collective bargaining and striking, thus providing an alternative which would discourage strikes and yet serve the public employees' interests. Viewed in this light we believe the phrases "quasi-public corporation" and "public service corporation" must refer only to entities which are specifically designated as such by the statutes under which they are organized and under which they operate. ▮ There is no claim here that the Roseville Community Hospital is not subject to ordinary collective bargaining procedures and other concerted activities of the type generally approved by law.

From the foregoing, we conclude that the private, nonprofit corporation, although involved to a certain extent with the city, does not come within the definition of "public agency" as used in section 3501 of the Government Code. (In general, see 1 McQuillin (3d ed.-Rev.) ch. 2, pts. 1, 2, p. 127 et seq.)

Our conclusion is supported by cases recently decided under the National Labor Relations Act, as amended, 29 United States Code Annotated sections 151-168; *Minneapolis Society of Fine Arts* (1971) 194 N.L.R.B. No. 55, 78 L.R.R.M. 1609, 1610-1611 (a nonprofit corporation operating an art museum and providing young students instruction in the theater arts, occupying premises owned by the City of Minneapolis and financed in part by revenue from the public tax fund); *Trans-East Air, Inc.* (1971) 189 N.L.R.B. No. 33, 76 L.R.R.M. 1546 (a private corporation operating an airport under lease from the City of Bangor, Maine); and *Culinary Alliance and Hotel Service Employees Union Local 402* (The San Diego Civic Facilities Corp.) (1969) 175 N.L.R.B. 161, 162-164 (a nonprofit, nonstock, tax exempt California corporation operating facilities known as the San Diego Community Concourse located in a two-square block area in

downtown San Diego, including a convention hall, with upstairs meeting rooms, an exhibit hall and a civil theater, on land owned by the city under an operations agreement with provisions relating to financial aid from the city in the event of deficits, but vesting management and control in the trustees of the corporation, with some limitations).

 The trial court here granted the corporation's motion for a summary judgment. (See Code Civ. Proc., § 437c.) The matter to be determined by the court in considering such a motion is whether the appellant presented any facts which give rise to a triable issue of fact. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 468 [33 Cal.Rptr. 661].) We conclude that no triable issue of fact was raised. The facts, as averred, created only an issue of law (see *American Society of Composers, Authors & Publishers* v. *Superior Court* (1962) 207 Cal.App.2d 676, 686-687 [24 Cal.Rptr. 772]), and this issue was correctly decided below.

The judgment is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.