[S.F. No. 23621. Oct. 26, 1978.]

CIVIL SERVICE ASSOCIATION, LOCAL 400 et al.,
Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

554

**Counsel**

Van Bourg, Allen, Weinberg & Roger and Stewart Weinberg for Plaintiffs and Appellants.

Carroll, Burdick & McDonough, Christopher D. Burdick, Silver & Wells, Stephen H. Silver and George W. Shaeffer, Jr., as Amici Curiae on behalf of Plaintiffs and Appellants.

Thomas M. O'Connor, City Attorney, Milton H. Mares and Burk E. Delventhal, Deputy City Attorneys, for Defendants and Respondents.

## OPINION

MANUEL, J.—Appellants are eight individuals who are employed in civil service positions by respondent City and County of San Francisco, and two labor organizations of which the employees, among them, are members. They appeal from a judgment denying their petition for a writ of mandate challenging the legality of short term suspensions imposed upon them for disciplinary reasons. We affirm the judgment as to appellant Jacqueline Robinson and reverse as to the remaining appellants.

Each of the employees is alleged to be a permanent employee in the civil service system. The two labor unions are both labor organizations within the meaning of the Meyers-Milias-Brown Act. Each of the eight employees incurred a short-term suspension of five days or less from employment imposed for disciplinary reasons by his or her respective department. The allegations of the petition filed in the trial court describing the various suspensions are as follows:

"IX. In none of the [eight] suspensions . . . were the individuals permitted full Union representation, and in none of the suspensions were the employees *given a copy of the charges and an opportunity to respond in advance of the discipline imposed.*

"X. In all of the suspensions, the employee and the Union demanded hearings and the right of Union representation of the disciplined employee. In each case, these rights were denied.

"XI. The denial of Union representation and *the denial of pre-discipline rights* is a *denial of due process of law* and the statutory protection of the Meyers-Milias-Brown Act."[1]

---

[1]While the proceedings may indicate that some of the appellants base their claims upon lack of any hearing (whether before or after their suspension), their briefs have approached this matter simply as a case where predisciplinary procedures of the kind explained in *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] are sought rather than a complaint that no hearing at all was afforded them. We note here in addition to paragraphs IX, X, and XI of the complaint the following portions of the complaint:

"IV.

The CITY AND COUNTY OF SAN FRANCISCO is a chartered City and County of the State of California which employs employees for the purpose of carrying out the functions set forth in the Charter of the CITY AND COUNTY OF SAN FRANCISCO. The CITY AND COUNTY OF SAN FRANCISCO has various departments through which employees are employed. The SAN FRANCISCO POLICE DEPARTMENT employs many

Appellants filed with their petition a declaration, by their attorney, which authenticated and incorporated several items of correspondence written by counsel of some of the respondents in connection with some of

classifications of employees, including Parking Control Persons. JACQUELINE ROBINSON was and is at all times material hereto an employee of the CITY AND COUNTY OF SAN FRANCISCO in the classification of PARKING CONTROL PERSON. The AIRPORT COMMISSION employs many classifications of employees, including Airport Policeman. ROBERT QUINN, GARY PIERCE, LARRY LOTTIE, DOMINIC TRINGALI were and are at all times material hereto employees of the CITY AND COUNTY OF SAN FRANCISCO in the classification of Airport Policemen. PAMELA NASH was employed by the CITY AND COUNTY OF SAN FRANCISCO in the DEPARTMENT OF PUBLIC HEALTH as a Clerk Typist, and BENNY CROSS was and is employed by the CITY AND COUNTY OF SAN FRANCISCO in the DEPARTMENT OF PUBLIC HEALTH at all times material hereto, as was PAMELA NASH. THOMAS FOWLER was employed by the CITY AND COUNTY OF SAN FRANCISCO working in the SAN FRANCISCO PUBLIC LIBRARY at all times material hereto.

"V.

"On or about April 2, 1975, JACQUELINE ROBINSON was suspended by her immediate employer, the San Francisco Police Department for an alleged transgression. Ms. Robinson requested and was denied representation by her Employee Organization, Local 400.

"VI.

"Robert Quinn was suspended by the Airport Commission on October 22, 1974 for three working days. Garry Pierce, Larry Lottie and Dominic Tringali were each suspended on April 25, 1974. Employees Quinn, Pierce, Lottie and Tringali each requested but were denied Employee Organization representation by Local 400 prior to the suspensions and were denied a hearing on their suspensions.

"VII.

"In the Spring of 1975, Benny Cross was suspended for a period of five days and was transferred in his position without a prior hearing and without the right of Union representation by his Employee Organization, Local 250. On January 20, 1975, Pamela Nash was suspended for five days and was denied a full hearing and Union representation.

"VIII.

"In December of 1974 Thomas Fowler was suspended by the San Francisco Public Library for five days and was denied Union representation and a hearing.

"IX.

"In none of the suspensions set forth hereinabove were the individuals permitted full Union representation, and in none of the suspensions were the employees given a copy of the charges and all of the materials and an opportunity to respond in advance of the discipline imposed.

"X.

"In all of the suspensions, the employee and the Union demanded hearings and the right of Union representation of the disciplined employee. In each case, these rights were denied.

"XI.

"The denial of Union representation and the denial of pre-discipline rights is a denial of due process of law and the statutory protection of the Meyers-Milias-Brown Act.

"XII.

"The Unions and the employees have exhausted all of their administrative remedies and have no adequate remedy at law."

the suspensions alleged.[2] In a memorandum of points and authorities filed a few days later, appellants expressly stated that their claim to relief was based upon the decision in *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194.

Following the issuance of the alternative writ of mandate respondents filed an "Answer And Return" to the petition in which they specifically denied several of its allegations, including those made in its paragraphs IX, X and XI (quoted above). They also filed a memorandum of points and authorities in which they opposed the petition, urging (1) that *Skelly* did not pertain to "minor" employee disciplinary action of the nature alleged; (2) that *Skelly* did not reach these eight suspensions, in any event, because it was not to be applied retroactively; and (3) that the Meyers-Milias-Brown Act did not support any part of the relief prayed for in the petition.

It would appear that all of the eight appellant employees except Jacqueline Robinson were suspended pursuant to section 8.342 of respondent city and county's charter; Robinson was suspended pursuant to section 8.343 thereof because she, alone among the eight, was employed in—and suspended by—respondent's police department. Section 8.342 provides: "Disciplinary Suspensions. The appointing officer may, for disciplinary purposes, suspend a subordinate for a period not exceeding thirty days; and suspension shall carry with it the loss of salary for the period of suspension. The suspended employee shall be notified in writing of the reason for such suspension, and if the suspension be for more than five days the employee shall, at his request, be given a hearing by the appointing officer. The decision of the appointing officer in all cases of suspension for disciplinary purposes shall be final."

Section 8.343 provides: "Fine, Suspension and Dismissal in Police and Fire Departments. Members of the fire or the police department guilty of any offense or violation of the rules and regulations of their respective departments, shall be liable to be punished by reprimand, or by fine not exceeding one month's salary for any offense, or by suspension for not to exceed three months, or by dismissal, after trial and hearing by the commissioners of their respective departments; provided, however, that the chief of each respective department for disciplinary purposes may suspend a member for a period not to exceed ten days for violation of the

---

[2]The declaration and documentation were apparently intended to support the issuance of an alternative writ of mandate.

rules and regulations of his department. Any member so suspended shall have the right to appeal such suspension to the fire commission or to the police commission, as the case may be, and have a trial and hearing on such suspension. . . ."

In addition it is claimed that in none of the suspensions were the individual employees permitted full union representation; that while demanded, said representation was denied. It is thus claimed that the denial of union representation is a denial of the statutory protection of the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510).

The trial court heard no evidence but considered the arguments of counsel and, as if a motion for judgment on the pleading had been filed by respondent, gave judgment for respondent.

### Issues Presented

The issues presented by this appeal are (1) whether due process of law requires governmental employees be given an opportunity in advance of the imposition of discipline, consisting of suspension of *five days or less,* to rebut the charges made against them and (2) whether petitioners were denied rights guaranteed them under Government Code sections 3500-3510 (Meyers-Milias-Brown Act).

The first issue relates to the application of *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, and *Barber* v. *State Personnel Bd.* (1977) 18 Cal.3d 395 [134 Cal.Rptr. 206, 556 P.2d 306], to these short-term suspensions. The second issue involves the application of *Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382 [113 Cal.Rptr. 461, 521 P.2d 453], upon which appellants rely.

### Discussion

### I

### APPLICATION OF SKELLY V. STATE PERSONNEL BD.

Appellants base their claim to prediscipline rights upon *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194. In *Skelly* we held that before the employee therein involved could be terminated from his permanent civil service position with the State of California he was entitled to preremoval safeguards. After analyzing the opinion of the various justices in *Arnett* v. *Kennedy* (1973) 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633], we concluded: "It is clear that due process does not require the state to

provide the employee with a full trial-type evidentiary hearing prior to the initial taking of punitive action. However, at least six justices on the high court agree that due process does mandate that the employee be accorded certain procedural rights before the discipline becomes effective. As a minimum, these preremoval safeguards must include notice of the proposed action, the reasons therefore, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (15 Cal.3d at p. 215.)

Both *Skelly* and *Arnett* involved discharges from employment of the employees therein involved. *Skelly* states at 15 Cal.3d 207-208: ". . . when a person has a legally enforceable right to receive a government benefit provided certain facts exist, this right constitutes a property interest protected by due process. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 261-262 [25 L.Ed.2d 287, 295-296; 90 S.Ct. 1011]; see *Geneva Towers Tenants Org.* v. *Federated Mortgage Inv.* (9th Cir. 1974) 504 F.2d 483, 495-496 (Hufstedler, J. dissenting).) Applying these principles, the high court has held that a teacher establishing 'the existence of rules and understandings, promulgated and fostered by state officials, that . . . justify his legitimate claim of entitlement to continued employment absent "sufficient cause," ' has a property interest in such continued employment within the purview of the due process clause. (*Perry* v. *Sindermann* (1972) 408 U.S. 593, 602-603 [33 L.Ed.2d 570, 580, 92 S.Ct. 2694]; see also *Board of Regents* v. *Roth* [1972] supra 408 U.S. at pp. 576-578 [33 L.Ed.2d at pp. 560-562].) And, in *Arnett* v. *Kennedy, supra,* 416 U.S. 134, six members of the court, relying upon the principles set forth in *Roth,* concluded that due process protected the statutory right of a nonprobationary federal civil service employee to continue in his position absent cause justifying his dismissal . . . . [Citation to various opinions in *Arnett.*]

"The California Act endows state employees who attain permanent status with substantially identical property interest. Such employees may not be dismissed or subjected to other disciplinary measures unless facts exist constituting 'cause' for such discipline. . . . In the absence of sufficient cause, the permanent employee has a statutory right to continued employment free of these punitive measures (§ 19500). This statutory right constitutes 'a legitimate claim of entitlement' to a government benefit within the meaning of *Roth.* Therefore, the state must comply with procedural due process requirements before it may deprive its permanent employee of this property interest by punitive action."

The question before us today is the extent to which the above principles apply to the short-term suspensions here involved.

Prior to *Skelly* it was determined by our Court of Appeal that a two-day suspension pursuant to the charter provision not preceded by a hearing did not violate the employee's constitutional rights. (*Apostoli* v. *City etc., of San Francisco* (1969) 268 Cal.App.2d 728 [74 Cal.Rptr. 435].) In *Patton* v. *Board of Harbor Commissioners* (1970) 13 Cal.App.3d 536, 541 [91 Cal.Rptr. 832], another pre-*Skelly* case, it was concluded ". . . The detriment to an employee of no more than 5 days' suspension in a 12-month period, while not negligible, is, in our view, not sufficient to justify a holding that a hearing is in the employee's constitutional right. . . . The employee is not deprived of a salary already earned, but merely of the opportunity to earn for several days."

Respondent city and county, relying heavily on these cases, contends that the punitive actions involved in this matter are minor actions not requiring predisciplinary action procedures of the kind required by *Skelly*. With this position we agree. However, our conclusion that *Skelly* itself is not controlling cannot lead us to ignore the principles expressed in formulating the rule to be applied in the instant case.

In agreeing with the respondent we do not mean to imply that a property right is not involved herein. We are of a contrary mind. Suspension of a right or of a temporary right of enjoyment may amount to a "taking" for "due process purposes" (*Goss* v. *Lopez* (1975) 419 U.S. 565, 572-76 [42 L.Ed.2d 725, 733-736, 95 S.Ct. 729]; *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 811 [132 Cal.Rptr. 477, 553 P.2d 637]). We have no hesitancy in holding that "due process" applies here; the question remains what process is due? (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593]; *In re Bye* (1974) 12 Cal.3d 96, 100-101 [115 Cal.Rptr. 382, 524 P.2d 854].)

*Skelly* recognized that due process requirements are not so inflexible as to require an evidentiary trial at the preliminary stage in every situation involving the taking of property. The majority of the United States Supreme Court was characterized as adhering to the principle that some form of notice and hearing must preclude a final deprivation of property, yet the timing and content of the notice as well as the nature of the hearing will depend upon appropriate accommodation of the competing

interests involved. (15 Cal.3d at p. 209.) We then said: ". . . In balancing such 'competing interests involved' so as to determine whether a particular procedure permitting a taking of property without a *prior* hearing satisfies due process, the high court has taken into account a number of factors. Of significance among them are the following: whether predeprivation safeguards minimize the risk of error in the initial taking decision, whether the surrounding circumstances necessitate quick action, whether the postdeprivation hearing is sufficiently prompt, whether the interim loss incurred by the person affected is substantial, and whether such person will be entitled to adequate compensation in the event the deprivation of his property proves to have been wrongful. . . ." (15 Cal.3d at p. 209; italics in original.)

Subsequent to *Arnett* and *Skelly* the United States Supreme Court further acted in this area of the law. In *Mathews* v. *Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893] the court concluded that an evidentiary hearing is not required prior to terminating social security disability benefits. The court stated: ". . . ' "[d]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances' *Cafeteria Workers* v. *McElroy,* 367 U.S. 886, 895 (1961). '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' *Morrissey* v. *Brewer,* 408 U.S. 471, 481 (1972). Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. *Arnett* v. *Kennedy, supra,* at 167-168 [40 L.Ed.2d 15, 94 S.Ct. 1633] (Powell, J. concurring in part); *Goldberg* v. *Kelly, supra,* at 263-266; *Cafeteria Workers* v. *McElroy, supra,* at 895. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, *the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.* See e.g., *Goldberg* v. *Kelly, supra,* at 263-271," (424 U.S. at pp. 334-335 [47 L.Ed.2d at p. 33]; italics added.)[3]

---

[3]Although the principles thus stated are clear, their application in particular cases by the high court has proved somewhat difficult to predict. Thus, in *Dixon* v. *Love* (1977) 431 U.S. 105 [52 L.Ed.2d 172, 97 S.Ct. 1723], decided soon after *Mathews,* it was held that an Illinois regulation providing for the automatic suspension of a driver who had been

■ With the above principles stated we first explain our determination that pretermination procedures of the kind required by *Skelly* are not here required. In the case of suspensions of the magnitude involved here it would appear that while the risk of error may be just as great as in a termination case, the consequences are not. This fact tends to weigh against the need for predisciplinary procedures. Whether surrounding circumstances warrant the action taken here is not shown in the record. The promptness of the postdisciplinary hearing would be very important in a termination or long-term suspension. Obviously, the uncertain quality of an employee's status and other harm accruing to him is greater the longer the issues remain unresolved by hearing. In a short-term suspension the employee will usually be back at work while the postdisciplinary hearing remains pending.

The shortness of the suspension tends to demonstrate that the interim loss should not be deemed "substantial" within the meaning of *Skelly* in the absence of special circumstances being indicated in any particular case. None are shown here.[4] A short suspension is not a destruction of the employee's employment but rather is an interruption. Usually in the event of a wrongful deprivation being shown the employee can be made whole by back wages for the period of wrongful suspension. We note in passing that historically the state has treated suspensions of 10 days or less as being somewhat minor with less procedural safeguards offered. (See

convicted repeatedly of traffic offenses was constitutionally valid, the court emphasizing inter alia that the driver had "had the opportunity for a full judicial hearing in connection with each of the traffic convictions . . ." (431 U.S. at p. 113 [52 L.Ed.2d at p. 181]), and that there was no dispute as to the factual basis for the administrator's decision (*id.*, at pp. 113-114 [52 L.Ed.2d at p. 181]). In *Oregon State Penitentiary* v. *Hammer* (1977) 434 U.S. 945 [54 L.Ed.2d 306, 98 S.Ct. 469], however—a case decided six months later—a majority of the court in an opinion *per curiam* (Stevens, Brennan, Stewart, and Marshall, JJ., dis.) vacated and remanded for reconsideration in light of *Dixon* a judgment of the Oregon Supreme Court holding that a tenured corrections officer was improperly discharged for cause absent the affording of pretermination rights such as those required by *Skelly* (i.e., fair notice of the charges against him and an opportunity to respond). The dissenters, characterizing the action of the majority as "cavalier" (434 U.S. at p. 945) [54 L.Ed.2d at p. 306, 98 S.Ct. at p. 469], pointed out that none of the factors held to be decisive in *Dixon*—notably the absence of factual dispute due to prior adjudication—was here present, and that therefore the court's action was unjustified.

[4]Absent the showing of exigent circumstances, nothing akin to the brutal need attendent in the termination of welfare payments and compelling a pretermination hearing in such cases seems to be present in these short-term suspension situations. Rather, the brevity of the period of suspension and remedy by way of hearing as hereinafter noted, likens the short-term suspension to the temporary taking of property upheld in *Mitchell* v. *W. T. Grant Co.* (1974) 416 U.S. 600 [40 L.Ed.2d 406, 94 S.Ct. 1895] and *Connolly Development, Inc.* v. *Superior Court, supra,* 17 Cal.3d 803.

Gov. Code, § 19576; *Skelly, supra,* 15 Cal.3d 194, 203, fn. 16; *Keeler* v. *Superior Court* (1956) 46 Cal.2d 596, 599 [297 P.2d 967].)

We also note that, during the period pending hearing, the employee in the minor suspension case does not face the bleak prospect of being without a job and the need to seek other employment hindered by the charges against him. (See *Skelly, supra,* 15 Cal.3d 194, 213.)

It is true that in *Goss* v. *Lopez* (1975) 419 U.S. 565 [42 L.Ed.2d 725, 95 S.Ct. 729], the United States Supreme Court held that certain public high school students who had been suspended from school for 10 days without a hearing had interests qualifying for the due process protection, and that such protection required that as a general rule[5] oral or written notice of charges and an opportunity to respond be afforded prior to removal. It also indicated, however, that "total exclusion from the educational process for more than a trivial period and certainly if the suspension is for 10 days" (*id.,* at p. 576 [42 L.Ed.2 at p. 736]) is a matter which could have serious and long-lasting repercussions in the life of a child, especially when such exclusion was the result of disciplinary action.[6] (*Id.,* at pp. 574-575 [42 L.Ed.2d at p. 735].) In any event, the court noted, "the timing and content of the notice and the nature of the hearing will depend on appropriate accomodation of the competing interests involved." (*Id.,* at p. 579 [42 L.Ed.2d at p. 737].) Here, for reasons we have stated, we are of the view that the employee's interest in continued employment, viewed in the context of the shortness of the suspensions here involved and the city's competing interest in prompt action for the maintenance of discipline, does not demand an accommodation of the nature we required in *Skelly.* (Cf. *Smith* v. *Organization of Foster Families* (1977) 431 U.S. 816 [53 L.Ed.2d 14, 97 S.Ct. 2094, 2113].) In light

---

[5]The high court recognized that in certain cases—namely in cases involving "[s]tudents whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process" (419 U.S. at p. 582 [42 L.Ed.2d at p. 739])—immediate removal would be justified, the "necessary notice and rudimentary hearing" in such cases to follow "as soon as practicable." (*Id.,* at pp. 582-583 [42 L.Ed.2d at p. 739].)

[6]The recent case of *Bd. of Curators, University of Mo.* v. *Horowitz* (1978) 431 U.S. 78 [55 L.Ed.2d 124, 98 S.Ct. 948], indicates that dismissal of a student for academic reasons is to be distinguished from disciplinary dismissals. "[W]e have frequently emphasized," the high court there stated, "that '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' [Citation.] The need for flexibility is well illustrated by the significant difference between the failure of a student to meet academic standards and the violation by a student of valid rule of conduct. This difference calls for far less stringent procedural requirements in the case of an academic dismissal." (*Id.,* at p. 86 [55 L.Ed.2d at pp. 132-133]; fn. omitted.)

of this determination we need not further explore the question of the retroactive application of *Skelly* and *Barber* to this case.

■ However, while the principles underlying *Skelly* do not here compel the granting of predisciplinary procedures there mentioned, it does not follow that the employees are totally without right to hearing. While due process does not guarantee to these appellants any *Skelly*-type predisciplinary hearing procedure, minimal concepts of fair play and justice embodied in the concept of due process require that there be a "hearing," of the type hereinafter explained.[7] The interest to be protected, i.e., the right to continuous employment, is accorded due process protection. While appellants may not in fact have been deprived of a salary earned but only of the opportunity to earn it, they had the expectancy of earning it free from arbitrary administrative action. (Compare *Patton* v. *Board of Harbor Commissioners, supra,* 13 Cal.App.3d 536, 541.) This expectancy is entitled to some modicum of due process protection. (*Perry* v. *Sindermann, supra,* 408 U.S. 593, 599-603 [33 L.Ed.2d 570, 578-581].)

For the reason stated above, however, we believe that such protection will be adequately provided in circumstances such as these by procedure of the character outlined in *Skelly,* (i.e., one that will apprise the employee of the proposed action, the reasons therefor, provide for a copy of the charges including materials upon which the action is based, and the right to respond either orally or in writing, to the authority imposing the discipline) if provided either during the suspension or within a reasonable time thereafter. Such a procedure will, in our view, provide a meaningful hedge against erroneous action. Along with providing an opportunity to recover lost wages, it will also provide an opportunity for the employee to protect his reputation, honor and integrity—items of importance to him at any time but especially in case of later disciplinary action where the present action might be deemed to be in aggravation of the penalty then to be imposed, or in case of later promotional opportunities available but where the present disciplinary action would tend to have a harmful effect. (See *Codd* v. *Velger* (1977) 429 U.S. 624 [51 L.Ed.2d 92, 97 S.Ct. 882]; *Board of Regents* v. *Roth* (1971) 408 U.S. 564, 573 [33 L.Ed.2d 548, 558, 92 S.Ct. 2701].)

[7]Cf. *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 308 [138 Cal.Rptr. 53, 562 P.2d 1302]; *Arroyo* v. *Regents of University of California* (1975) 48 Cal.App.3d, 793, 799 [121 Cal.Rptr. 918].

Appellants Quinn, Pierce, Lottie, Tringali, Nash and Fowler allege denial of hearings and are entitled to a hearing as described herein.[8] Appellant Cross alleges simply a five-day suspension, and transfer of position without a *prior* hearing. Because as we have shown due process does not require for such employees a prior hearing in these short-term suspensions, Cross has not alleged any right to a prior hearing as such. However, it appears he is entitled to some type of hearing as should be accorded to Quinn, Pierce, Lottie, Tringali, Nash and Fowler.

█ It appears that appellant Jacqueline Robinson, an employee of the police department, had an opportunity for a postdisciplinary hearing. (S.F. Charter, § 8.343.) The complaint does not allege a demand for a hearing nor a denial of such demand. Thus, it does not appear that appellant Robinson has exhausted her administrative remedies, a prerequisite to seeking judicial relief. (*Fiscus* v. *Dept. of Alcoholic Bev. Control* (1957) 155 Cal.App.2d 234 [317 P.2d 993]; cf. *South Coast Regional Com.* v. *Gordon* (1977) 18 Cal.3d 832 [135 Cal.Rptr. 781, 558 P.2d 867].) As to appellant Robinson the complaint thus shows no ground for judicial intervention.

## II

### *Meyers-Milias-Brown Act*

Appellants next claim unlawful employer interference with the exercise of their rights under the Meyers-Milias-Brown Act (Gov. Code, §§ 3502-3504), prior to the imposition of the five-day suspensions. They observe that under section 3502 government employees have a right to join and participate in the affairs of employee organizations; that under section 3503 employee organizations have a right to represent their members in connection with all matters within the scope of representation including disciplinary matters. Citing *Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382 [113 Cal.Rptr. 461, 521 P.2d 453], for the proposition that "in all matters involving discipline, employees were entitled to be represented by their employee organization," they conclude that the representation in question must include the opportunity to discuss the employees' case and to represent the employee in advance of the imposition of discipline.

---

[8]As noted above, section 8.342 affords these employees no right to hearing, their suspensions being five days or less.

■ We have, in the prior section of this opinion explained the employees' rights to a short-term suspension procedure. Since the employees have thus been held to have no rights under *Skelly* v. *State Personnel Board, supra,* 15 Cal.3d 194, to a hearing prior to the imposition of the five-day suspension imposed, the appellant's claims to presuspension representation must to that extent fall. However, our treatment of the matter has not left the appellant employees (with the exception of appellant Robinson)[9] entirely without a right to be heard. We analyze such appellants' claims to representation in light of the limited procedures recognized hereinabove.

Appellants refer us to Government Code section 3503. That section reads in part as follows: "*Recognized* employee organizations shall have the right to represent their members in their employment relations with public agencies . . . . Nothing in this section shall prohibit any employee from appearing in his own behalf in his employment relations with the public agency."[10] (Italics in original.) Their sole case citation for the proposition they advanced is to *Social Workers' Union, Local 535,* which held that "a public employee's right to union representation under section 3504 attaches to an employer-employee interview which an employee reasonably fears may investigate and sanction his union-related activities." (11 Cal.3d at p. 390.)

We do not deem *Social Workers' Union, Local 535* entirely dispositive of the matter at bench. Appellants herein make no claim of fear of adverse action by respondent city by reason of union activity. We did, however, in *Social Workers' Union, Local 535* demonstrate our sensitivity to developments in the federal law in interpreting state legislation (11 Cal.3d 382, 391), noting that the phrase "wages, hours and other terms and conditions of employment" as used in Government Code section 3504 seems to be taken from the federal Labor Management Relations Act (see also: *Service Employees' Internat. Union, Local No. 22* v. *Roseville. Community Hosp.* (1972) 24 Cal.App.3d 400, 408-409 [101 Cal.Rptr. 69]; see Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 749).

[9]Hereafter the use of the term "appellants" shall be used to exclude appellant Robinson from its coverage.

[10]Government Code section 3504 provides: "The scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to wages, hours, and other terms and conditions of employment."

Under the provisions of section 7 of the National Labor Relations Act,[11] an employee is entitled to the presence of his union representative during an investigatory interview according to recent United States Supreme Court cases. (*NLRB* v. *Weingarten, Inc.* (1975) 420 U.S. 251 [43 L.Ed.2d 171, 95 S.Ct. 959]; *Garment Workers* v. *Quality Mfg. Co.* (1975) 420 U.S. 276 [43 L.Ed.2d 189, 95 S.Ct. 972].) We note that in *Weingarten* the United States Supreme Court speaking through Justice Brennan stated (420 U.S. 260-263 [43 L.Ed.2d 179-181]): "The action of an employee in seeking to have the assistance of his union representative at a confrontation with his employer clearly falls within the literal wording of §7 that '[e]mployees shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection.' *Mobil Oil Corp.* v. *NLRB*, 482 F.2d 842, 847 (CA7 1973). This is true even though the employee alone may have an immediate stake in the outcome; he seeks 'aid or protection' against a perceived threat to his employment security. The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The Board's construction also gives recognition to the right when it is most useful to both employee and employer. A single employee confronted by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors. A knowledgeable union representative could assist the employer by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident occasioning the interview. Certainly his presence need not transform the interview into an adversary contest. Respondent suggests nonetheless that union representation at this stage is unnecessary because a decision as to employee culpability or disciplinary action can be corrected after the decision to impose discipline has become final. . . ."

Although the court's statement was made to justify representation at an investigational stage, because of the informal nature of the procedures

---

[11]Section 7 confers the right of the employees "to engage in . . . concerted activities . . . for mutual aid or protection."

recognized herein this statement has meaning and cogency in the circumstances here presented. We have long recognized the right of a public employee to have his counsel represent him at disciplinary hearings. (*Steen* v. *Board of Civil Service Commrs.* (1945) 26 Cal.2d 716, 727 [160 P.2d 816]; cf. *Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531, 540-544 [92 Cal.Rptr. 525].) While *Steen* may have dealt with representation by a licensed attorney, the right of representation by a labor organization in the informal process here involved seems to follow from the right to representation contained in the Meyer-Milias-Brown Act and the right to representation recognized in *Steen.* Thus, the labor organization may here participate if requested by the employee. However,. we note that the labor organization entitled under the act must be "recognized" (Gov. Code, §§ 3501, subd. (b), 3503), a point highly disputed by respondent city. On remand this factual issue may be clarified by the proofs of the parties.

## III

It is clear from the record that the right to the procedures provided for herein were not considered by the trial court. The judgment is affirmed as to appellant Jacqueline Robinson and is reversed as to all other appellants. The trial court will then be in a position to determine if factually the procedures provided for here have been observed and if so whether the appellant labor organization has participated fully. In this latter connection appellants' declarations and documents filed below showing extensive correspondence may be of importance in determining the extent of union representation and whether and to what extent the procedural rights of appellant employees have been observed.[12] Accordingly, the cause is remanded to the trial court with directions to conduct further proceedings consistent with the views expressed herein. All appellants save Jacqueline Robinson to recover costs on appeal. Respondents to bear their own costs.

Mosk, J., Clark, J., and Richardson, J., concurred.

**TOBRINER, J.,** Concurring and Dissenting.—I concur in the majority's conclusion that under the Meyers-Milias-Brown Act the employees are entitled to union representation during the entire course of the employer-initiated disciplinary proceedings. In addition, I agree with the majority

---

[12]The state of the record and briefing leaves resolution of these points too conjectural at this juncture.

that a permanent employee's "right to continuous employment" constitutes a "legitimate claim of entitlement" under the relevant constitutional authorities so that such an employee must be accorded procedural due process whenever the government seeks to suspend him from employment without pay. (*Ante,* pp. 559-560.)

I cannot agree with the majority, however, that in this context the demands of due process are fully satisfied so long as the employer, within a reasonable time *after* the effective date of the employees' suspension without pay, gives the employee an opportunity to answer the charges against him. In my view, the governing authorities establish that, in the absence of an emergency, a public employee must be afforded notice of any charges and an opportunity informally to answer such charges *before* incurring a suspension without pay.

As the majority recognizes, in *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [724 Cal.Rptr. 14, 539 P.2d 774], this court addressed the question of the procedures required by the Constitution in the case of the dismissal of a permanent public employee. *Skelly* held that "due process . . . mandate[s] that the employee be accorded certain procedural rights *before* the discipline becomes effective. As a minimum, these preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (Italics added.) (15 Cal.3d 194, 215.)

Procedural protection prior to the imposition of discipline is important, the *Skelly* court pointed out, because even if postdiscipline proceedings ultimately vindicate the employee and provide a back-pay remedy, the employee is removed from the payroll pending such proceedings. Unless the employee has accumulated significant savings, he may be unable to support himself and his family during the interim. The suspension of an employee's regular earnings for as long as a week can impose a serious deprivation upon the worker and his family.

Pretermination procedures also serve the important, if more subtle, purpose of according the accused individual a measure of respect and dignity, assuring him that he is not so insignificant that the government may curtail his livelihood—even for relatively short periods of time—without giving him some opportunity to explain or rebut the

charges against him. (Cf. Davis & Gilhool, *The Economics of Constitutionalized Repossession: A Critique of Professor Johnson, and a Partial Reply* (1975) 47 So.Cal.L.Rev. 116, 147-149; Tribe, *Technology Assessment and the Fourth Discontinuity: The Limits of Instrumental Rationality* (1973) 46 So.Cal.L.Rev. 617, 631.)

The majority would distinguish *Skelly* on two grounds: "the shortness of the suspensions here involved" and "the city's competing interest in prompt action for the maintenance of discipline." (*Ante*, p. 563.) In my view, neither of these considerations supports the majority's conclusion that absolutely no procedural safeguards need be afforded an employee prior to suspending him from his job without pay.

The city's interest in imposing prompt discipline does not distinguish *Skelly*. In fact, that interest is more compelling in termination cases such as *Skelly* because the alleged transgression is generally more serious than in suspension cases. Yet *Skelly* established the principle that, absent an emergency, notice and an opportunity to respond must precede termination; the same principle should apply in suspension cases.

Thus the majority's conclusion can only be based on its first ground: that the employee suffers a smaller deprivation when suspended rather than terminated. Certainly the severity of the deprivation is one element to be considered in determining how much process is due. But *Goss* v. *Lopez* (1975) 419 U.S. 565 [42 L.Ed.2d 725, 95 S.Ct. 729] and subsequent cases refute the majority's contention that an employee has no right to respond to the charges against him before he is suspended without pay for as much as a week.

In *Goss* the Supreme Court ruled that, absent an emergency, public school authorities could not suspend pupils for 10 days without first affording the students a chance to respond to the charges against them. "The concern would be mostly academic if the disciplinary process were a totally accurate, unerring process, never mistaken and never unfair. Unfortunately, this is not the case, and no one suggests that it is. Disciplinarians, although proceeding in utmost good faith, frequently act on the reports and advice of others; and the controlling facts and the nature of the conduct under challenge are often disputed. The risk of error is not at all trivial, and it should be guarded against if that may be done without prohibitive cost or interference with the educational process." (*Id.,* at pp. 579-580 [42 L.Ed.2d at p. 738].)

Although *Goss* dealt with suspensions from school, the courts have applied its holding to public employment. In *Muscare* v. *Quinn* (7th Cir. 1975) 520 F.2d 1212, 1215, certiorari dismissed (1976) 425 U.S. 560 [48 L.Ed.2d 165, 96 S.Ct. 1752], the court, citing *Goss,* ruled that "[p]ublic employees facing temporary suspension for less than 30 days have interests qualifying for protection under the Due Process Clause, and due process requires at the minimum that they be granted a hearing prior to suspension where they may be fully informed of the reasons for the proposed suspension and where they may challenge their sufficiency." (See also, *Waite* v. *Civil Service Commission* (1978) — W.Va. — [241 S.E.2d 164, 170]; *Bagby* v. *Beal* (M.D. Pa. 1977) 439 F.Supp. 1257, 1261 [two-week suspension]; *Eley* v. *Morris* (N.D. Ga. 1975) 390 F.Supp. 913, 923.)

The majority claims that *Goss* is inapposite here, but fails to point to any relevant distinction. The suspensions here not only deprive the employees of "protected interests," but also of the funds they need to support themselves and their families. I cannot understand how the majority can conclude that a suspension from a job without pay creates a lesser hardship than a suspension from school.

Naturally, presuspension safeguards need not be as extensive as those preceding termination. The due process clause does not mandate that the employer permit workers to retain counsel, call witnesses or confront and cross-examine their accusers prior to suspension. But employers should be required to inform employees of the charges against them and give them a chance to respond informally, either orally or in writing, to the accusations. (*Goss* v. *Lopez, supra,* 419 U.S. at pp. 582-583 [42 L.Ed.2d at pp. 739-740].) " 'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the Clause must be satisfied." (*Id.,* at p. 574 [42 L.Ed.2d at p. 735], quoting *Wisconsin* v. *Constantineau* (1971) 400 U.S. 433, 437 [27 L.Ed.2d 515, 519, 91 S.Ct. 507].)

I would grant a writ of mandate requiring the employer to afford plaintiffs an opportunity to respond to the charges against them before ordering suspensions.

Bird, C. J., and Newman, J., concurred.

On November 6, 1978, the judgment was modified to read as printed above.