NEAL J.,
Concurring and Dissenting.—I concur in the majority’s determination to reverse. As a matter of due process of law, controlling precedent *119 required that the school district hold a hearing reasonably promptly following suspension of appellant. The seven-month delay in this case violated this requirement. Further, Education Code section 45304 explicitly forbade suspending appellant without pay for more than 30 days.
I dissent, however, from the majority’s imposition of a due process right to a presuspension hearing. This is contrary to the controlling decisions of the California Supreme Court, and contrary to sound policy.
In Civil Service Assn. v. City and County of San Francisco (1978) 22 Cal.3d 552, 564 [150 Cal.Rptr. 129, 586 P.2d 162], the California Supreme Court determined that constitutional due process does not require a hearing prior to suspension of a government employee. Civil Service held the following sufficient for due process: “[A procedure] that will apprise the employee of the proposed action, the reasons therefor, provide for a copy of the charges including materials upon which the action is based, and the right to respond either orally or in writing, to the authority imposing the discipline . . . either during the suspension or within a reasonable time thereafter.” {Ibid., italics added.)
Although the case involved short, five-day suspensions, the court’s discussion indicated that a prompt posfsuspension hearing would be sufficient even in long-term suspension cases: “The promptness of the postdisciplinary hearing would be very important in a termination or long-term suspension.” (22 Cal.3d at p. 562, italics added.)
In the earlier, seminal case, Shelly v. State Personnel Bd. (1975) 15 Cal.3d 194, 215 [124 Cal.Rptr. 14, 539 P.2d 774], the Supreme Court held that a prior hearing is not required even where a classified employee is terminated rather than merely suspended: “It is clear that due process does not require the state to provide the employee with a full trial-type evidentiary hearing prior to the initial taking of punitive action . . . However . . . minimum . . . preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline.”
Recapitulating Civil Service and Shelly, no hearing is required before either termination or suspension, and while an opportunity to respond “either orally or in writing” must be afforded px&termination, in suspension cases it need only be afforded reasonably promptly after the suspension. Full hearings in either situation are required only with reasonable promptness after the disciplinary action.
*120 These precedents, which are binding on us, rest on a sound “balancing [of] . . . ‘competing interests involved.’ ” (15 Cal.3d at p. 209.)
State employers are from time to time confronted, on short notice, with evidence which, if true, would establish that an employee is unfit for duty, and will endanger the public, or himself, if he continues to work. Some examples: the drinking driver or pilot; the embezzling accountant; the abusive schoolteacher. Sound public policy strongly dictates that the state be able to immediately relieve the employee, rather than allow him or her to keep working while careful prehearing investigation and preparation take place. The predecision hearing required by the majority may cripple the state’s ability to act promptly to mitigate dangers posed by an unfit employee.
The employee’s counterbalancing interest in having a presuspension hearing is not nearly so strong. As recognized in Gilbert v. Homar (1997) 520 U.S. 924, _ [117 S.Ct. 1807, 1812-1814, 138 L.Ed.2d 120, 128-130], as long as the suspended employee receives a hearing promptly after his suspension takes effect, the lost income is relatively insubstantial, compared with termination, and fringe benefits such as health and life insurance are often not affected at all. Further, the employee has a substantial interest in seeing that a decision concerning his continued suspension is not made with excessive haste, for if the state is forced to act too quickly, the decision maker may give greater weight to the public interest and leave the suspension in place. (Gilbert, supra, 520 U.S. at p._[117 S.Ct. 1814, 138 L.Ed. 2d at p. 130].) Or, for that matter, the state, moving too swiftly, might act on incomplete or hastily gathered information and improperly terminate him.
The majority appears to suggest that its determination that a “predeprivation hearing” was required rests on the “particular circumstances presented on this record,” (maj. opn., ante, at p. 114) i.e., the length of appellant’s suspension, the fact that the Los Angeles Unified School District (District) had known of his condition for some time prior to imposing the suspension, and in hindsight, the weakness of the District’s claim that appellant was medically incapacitated. But the determination whether a hearing must occur presuspension cannot be made in hindsight. At the time of a suspension decision it often will not be known how long the suspension will last, or whether a more deliberate analysis will support the conclusion that an employee is unfit for duty.
As to appellant’s lost wages, I conclude, as noted at the outset, that District was forbidden by Education Code section 45304 to suspend appellant without pay for more than 30 days. On the other hand, Education Code *121 section 45307 empowered the District (personnel commission) to determine, subject to the section 45304 constraint, whether to award backpay to a suspended and later reinstated employee. I believe there was evidence in the record sufficient to justify the initial suspension, and to support the commission’s determination not to award backpay within the maximum authorized period of suspension without pay, i.e., 30 days.
I would reverse and remand with directions to the trial court to issue a writ of mandate ordering the District to reinstate appellant’s benefits and to pay his wages for the period from December 29, 1993 (30 days after suspension) through reinstatement on June 22, 1994. I would, however, eschew any suggestion that employee suspensions must be preceded by a hearing.