TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

———————————————————————

|  |  |  |
|---|---|---|
| OPINION | : |  |
|  | : | No. 98-303 |
| of | : |  |
|  | : | June 18, 1998 |
| DANIEL E. LUNGREN | : |  |
| Attorney General | : |  |
|  | : |  |
| GREGORY L. GONOT | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

———————————————————————————————————————————

THE HONORABLE WILLIAM A. CRAVEN, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:

1. May a joint powers agency be established by a city and a nonprofit public benefit corporation created by the city?

2. May a joint powers agency established by a city and another local agency impose development impact fees on the development of property in a geographic area that is not within the boundaries of any of the contracting parties?

CONCLUSIONS

1.     A joint powers agency may not be established by a city and a nonprofit public benefit corporation created by the city.

2.     A joint powers agency established by a city and another local agency may not impose development impact fees on the development of property in a geographic area that is not within the boundaries of any of the contracting parties.

ANALYSIS

The questions presented for resolution concern the formation of a joint powers agency having the authority to issue bonds under the Joint Exercise of Powers Act (Gov. Code, §§ 6500-6599; "Act"). **Footnote No. 1** We are asked to determine whether a nonprofit public benefit

corporation may enter into a joint powers agreement with a city and whether such an agreement between a city and another type of local agency may provide for the imposition of development impact fees extraterritorially. We conclude that neither proposal would comply with the Act's requirements.

1.     Nonprofit Public Benefit Corporations

The Act authorizes two or more "public agencies" (§ 6500), when authorized by their governing authority, to enter into agreements to "jointly exercise any power common to the contracting parties" (§ 6502). "The agency or entity provided by the agreement to administer or execute the agreement may be one or more of the parties to the agreement or a commission or board constituted pursuant to the agreement or a person, firm or corporation, including a nonprofit corporation designated in the agreement . . . ." (§ 6506.) For purposes of the Act, "the [administering] agency is a public entity separate from the parties to the agreement" (§ 6507) and "shall possess the common power specified in the agreement and may exercise it in the manner or according to the method provided in the agreement" (§ 6508).

As a general proposition, the Act "grants no new powers but merely sets up a new procedure for the exercise of existing powers." (*City of Oakland* v. *Williams* (1940) 15 Cal.2d 542, 599; see also 71 Ops.Cal.Atty.Gen. 266, 267 (1988).) However, when the Marks-Roos Local Bond Pooling Act of 1985 (§§ 6584-6599; "Marks-Roos") was enacted as part of the Act (Stats. 1985, ch. 868, § 6), joint powers agencies were authorized to exercise certain new powers, including the issuance of bonds (§§ 6588, subd. (c); 6591), irrespective of whether the parties to the agreement could independently exercise such powers. (75 Ops.Cal.Atty.Gen. 6, 7-8 (1992).) As stated in section 6587, "[t]his article shall be deemed to provide a complete and supplemental method for exercising the powers authorized by this article, and shall be deemed as being supplemental to the powers conferred by other applicable laws." Marks-Roos was enacted "to assist local agencies in financing public capital improvements, working capital, liability and other insurance needs, or projects whenever there are significant public benefits [as specified therein] for taking that action." (§ 6586.)

Given this background, we proceed to determine whether a city and a nonprofit public benefit corporation created by the city may be partners in establishing a joint powers agency. Under Marks-Roos, such an agency would be termed the "authority" and defined as "an entity created pursuant to Article 1 (commencing with section 6500)." (§ 6585, subd. (a).)

Referring back to section 6500, then, we find that an entity may be created under the Act by "public agencies" that are defined as follows:

". . . 'public agency' includes, but is not limited to, the federal government or any federal department or agency, this state, another state or any state department or agency, a county, county board of education, county superintendent of schools, *city*, *public corporation*, public district, or regional transportation commission of this state or another state." (Italics added.)

Does a nonprofit public benefit corporation come within the meaning of "public corporation" as that term is used in the Act?

In *Service Employees' Internat. Union, Local No. 22* v. *Roseville Community Hosp.* (1972) 24 Cal.App.3d 400, the term "public corporation" was defined in the context of whether a community hospital, organized as a private nonprofit corporation, was subject to a public employees collective bargaining statute (§ 3501). The court concluded that it was not, stating: "Public corporations are 'those corporations formed for political and governmental purposes and vested with political and governmental powers.' [Citations.]" (*Id*., at p. 407.)

A nonprofit public benefit corporation, on the other hand, is formed by "persons," both private and public (Corp. Code, §§ 5120, 5065), for any public or charitable purposes (Corp. Code, § 5111). Such corporations are not formed for "political and governmental purposes," and a review of their powers (Corp. Code, § 5140) reveals none that are "political and governmental" in nature.

Accordingly, a nonprofit public benefit corporation is not a "public corporation" for purposes of the Act and therefore does not qualify as a "public agency" under section 6500. The only function of a nonprofit corporation that is specifically authorized in the Act is to administer or execute the agreement made by the contracting parties. (§ 6506.)

Finally, although section 6500 states that a public agency "includes, but is not limited to," the entities specified therein, a nonprofit public benefit corporation does not fall within the classification of entities generally established by the statute. Section 6500's classification is one of *governmental* entities, particularly given that the only term which could possibly refer to a non-governmental entity ("public corporation") has not been judicially so construed. Under the general legal maxim of *noscitur a sociis* ("it is known from its associates"), we are to treat a list of items in a statute as referring to "items similar in nature and scope." (*Moore* v. *California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1011-1012; see *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159-1160; *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 14; *Martin* v. *Holiday Inns, Inc.* (1988) 199 Cal.App.3d 1434, 1437; *People* v. *Stout* (1971) 18 Cal.App.3d 172, 177.)

We conclude that a joint powers agency may not be established by a city and a nonprofit public benefit corporation created by the city.

2.      Imposition of Development Impact Fees

The second question presented concerns the imposition of development impact fees by a joint powers agency. May such fees be imposed on the development of property in a geographic area that is not within the boundaries of any member of the joint powers agency? We conclude that the fees may not be collected extraterritorially.

A development impact fee is defined under the Mitigation Fee Act (§§ 66020-66025; "MFA") as:

"'. . . a monetary exaction other than a tax or special assessment, whether established for a broad class of projects by legislation of general applicability or imposed on a specific project on an ad hoc basis, that is charged by a local agency to the applicant in connection with approval of

a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project . . . ." (§ 66000, subd. (b).)

"Local agency," as that term is used in the MFA, "means a county, city, whether general law or chartered, city and county, school district, special district, or any other municipal public corporation or district." (§ 66000, subd. (c).)

Section 66001 sets forth the main operative provisions of the MFA. It provides:

"(a) In any action establishing, increasing, or imposing a fee as a condition of approval of a development project by a local agency on or after January 1, 1989, the local agency shall do the following:

"(1) Identify the purpose of the fee.

"(2) Identify the use to which the fee is to be put. . . .

"(3) Determine how there is a reasonable relationship between the fee's use and the type of development project on which the fee is imposed.

"(4) Determine how there is a reasonable relationship between the need for the public facility and the type of development project on which the fee is imposed.

"(b) In any action imposing a fee as a condition of approval of a development project by a local agency on or after January 1, 1989, the local agency shall determine how there is a reasonable relationship between the amount of the fee and the cost of the public facility or portion of the public facility attributable to the development on which the fee is imposed.

"(c) Upon receipt of a fee subject to this section, the local agency shall deposit, invest, account for, and expend the fees pursuant to Section 66006.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

We have previously analyzed section 66001 in the context of determining whether it allows a fire protection district to impose a fee for the construction of facilities or equipment needed for fire protection. (73 Ops.Cal.Atty.Gen. 229 (1990).) In concluding that the statute does not grant such authority, we reasoned in part as follows:

"We find no language in section 66001 which grants authority to any public agency to impose fees upon a development project. Instead the language . . . assumes the preexistence of authority from sources outside the section both to approve a development project and to impose a fee as a condition to such approval. The purpose of the section is to make additional procedural requirements when such authority is exercised." (*Id.*, at p. 231.)

Accordingly, we must look to the Act and any other governing statutes to determine whether development impact fees may be imposed by a joint powers agency.

The Act itself, including Marks-Roos, does not expressly authorize the imposition of development impact fees. (See §§ 6508, 6588.) Therefore, the power to impose development impact fees must be one that is common to each of the contracting parties if it is to be exercised by the joint powers agency. (§ 6502; *City of Oakland* v. *Williams*, *supra*, 15 Cal.2d at 599.) **Footnote No. 2**

Here, we may assume that each of the contracting parties is authorized to impose development impact fees under its own empowering law. The issue to be resolved is whether such fees may be imposed on development projects not within the boundaries of any of the contracting parties. Section 6502 states that "[i]t shall not be necessary that any power common to the contracting parties be exercisable by each such contracting party with respect to the geographical area in which such power is to be jointly exercised." This implies that the power to impose development impact fees would have to be exercised in connection with a development project located within the boundaries of *at least one* of the contracting parties.

More importantly, the "fee" must be "a monetary exaction . . . that is charged by a local agency to the applicant in connection with approval of a development project . . . ." (§ 66000, subd. (b).) If the project is not within the boundaries of any of the contracting parties, none of them would have approval authority over the project. Hence, the fee would not be one that is imposed "in connection with approval of [the] project." (*Ibid*.) Even aside from due process considerations and similar constitutional restrictions, we find no statutory authority that would permit a joint powers agency to impose development impact fees in the described circumstances.

We conclude that a joint powers agency established by a city and another local agency may not impose development impact fees on the development of property in a geographic area that is not within the boundaries of any of the contracting parties.

* * * * *

---

**Footnote No. 1**
Unless otherwise specified, all section references herein are to the Government Code.
**Footnote No. 2**
In exercising the contracting agencies' common power to impose development impact fees, the joint powers agency would be subject to the terms of the MFA. A joint powers agency would fall within the MFA's definition of a "local agency," which includes an "authority, agency, any other municipal public corporation or district . . . ." (§ 66000, subd. (c).)

---